## McKEE *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 131.   Argued November 3, 1896. — Decided November 30, 1896.

The last clause of section 4 of the act of March 2, 1891, c. 496, 26 Stat. 822, entitled " An act to credit and pay to the several States and Territories and the District of Columbia all moneys collected under the direct tax levied by the act of Congress approved August 5, 1861," does not refer to or cover the cases of those owners who are mentioned in the first clause of the same section.

*Brewer* v. *Blougher,* 14 Pet. 178, affirmed to the point that it is the duty of the court, in construing a statute, to ascertain the meaning of the legislature from the words used in it, and from the subject-matter to which it relates, and to restrain its meaning within narrower limits than its words import, if satisfied that the literal meaning of its language would extend to cases which the legislature never designed to embrace in it.

THE case is stated in the opinion.

*Mr. W. S. Monteith* for appellants.   *Mr. Leroy F. Youmans* was on his brief.

*Mr. Assistant Attorney General Dodge* for appellees.   *Mr. Assistant Attorney Gorman* was on his brief.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The appellants herein have brought this appeal for the purpose of obtaining a review of a judgment of the Court of Claims dismissing their petition.   No opinion was delivered by that court in this case, but it was decided upon the authority of the case of *Sams* v. *United States,* 27 C. Cl. 266, which involved the construction of the same statute that is before us in this case.

It appears by the finding of the court that one Henry McKee was the owner of certain lands, which are therein described, in the town of Beaufort, in the parish of St. Helena, South Carolina, and that while he was such owner the land was sold for the payment of the direct tax provided for in section 9, and the following sections of the act approved

August 5, 1861, c. 45, entitled "An act to provide increased revenue from imports, to pay the interest on the public debt, and for other purposes." 12 Stat. 292. The property was bid in by the United States and was thereafter resold by the government. The direct tax on the property so sold amounted in all to $91.52, and upon the resale of such property there was received into the Treasury of the United States, in excess of the direct tax, the sum of $5003.41. Henry McKee, the legal owner of the property at the time of its sale, died some time thereafter, leaving a will, and the claimants are the beneficiaries thereunder, being his widow and children. These same claimants have heretofore obtained judgment in the Court of Claims against the government for the sum of $5680.60 on account of the same real estate above described. That judgment was obtained, and the claim in this case is founded upon the act approved March 2, 1891, 26 Stat. 822, entitled "An act to credit and pay to the several States and Territories and the District of Columbia all moneys collected under the direct tax levied by the act of Congress approved August 5, 1861." The act is set forth in full in the margin.[1]

---

[1] An act to credit and pay to the several States and Territories and the District of Columbia all moneys collected under the direct tax levied by the act of Congress approved August fifth, eighteen hundred and sixty-one.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That it shall be the duty of the Secretary of the Treasury to credit to each State and Territory of the United States and the District of Columbia a sum equal to all collections by set off or otherwise made from said States and Territories and the District of Columbia or from any of the citizens or inhabitants thereof or other persons under the act of Congress approved August fifth, eighteen hundred and sixty-one, and the amendatory acts thereto.

SEC. 2. That all moneys still due to the United States on the quota of direct tax apportioned by section eight of the act of Congress approved August fifth, eighteen hundred and sixty-one, are hereby remitted and relinquished.

SEC. 3. That there is hereby appropriated, out of any money in the Treasury not otherwise appropriated, such sums as may be necessary to reimburse each State, Territory and the District of Columbia for all money found due to them under the provisions of this act; and the Treasurer of the United States is hereby directed to pay the same to the Governors of the States and Territories and to the Commissioners of the District of Colum-

The judgment which the claimants have already obtained in the Court of Claims was rendered under the first clause in section 4 of the act. The claim now before the court rests upon the last clause of section 4, which reads as follows: "*And provided further,* That any sum or sums of money received into the Treasury of the United States from the sale of lands bid in for taxes in any State under the laws described

---

bia, but no money shall be paid to any State or Territory until the legislature thereof shall have accepted, by resolution, the sum herein appropriated, and the trusts imposed, in full satisfaction of all claims against the United States on account of the levy and collection of said tax, and shall have authorized the Governor to receive said money for the use and purposes aforesaid: *Provided,* That where the sums, or any part thereof, credited to any State, Territory or the District of Columbia, have been collected by the United States from the citizens or inhabitants thereof, or any other person, either directly or by sale of property, such sums shall be held in trust by such State, Territory or the District of Columbia for the benefit of those persons or inhabitants from whom they were collected, or their legal representatives: *And provided further,* That no part of the money collected from individuals and to be held in trust as aforesaid shall be retained by the United States as a set off against any indebtedness alleged to exist against the State, Territory or District of Columbia in which such tax was collected: *And provided further,* That no part of the money hereby appropriated shall be paid out by the Governor of any State or Territory or any other person to any attorney or agent under any contract for services now existing or heretofore made between the representative of any State or Territory and any attorney or agent. All claims under the trust hereby created shall be filed with the Governor of such State or Territory and the Commissioners of the District of Columbia, respectively, within six years next after the passage of this act; and all claims not so filed shall be forever barred, and the money attributable thereto shall belong to such State, Territory or the District of Columbia, respectively, as the case may be.

SEC. 4. That it shall be the duty of the Secretary of the Treasury to pay to such persons as shall in each case apply therefor, and furnish satisfactory evidence that such applicant was at the time of the sales hereinafter mentioned the legal owner, or is the heir at law or devisee of the legal owner of such lands as were sold in the parishes of Saint Helena and Saint Luke's in the State of South Carolina, under the said acts of Congress, the value of said lands in the manner following, to wit: To the owners of the lots in the town of Beaufort, one half of the value assessed thereon for taxation by the United States direct tax commissioners for South Carolina; to the owners of lands which were rated for taxation by the State of South Carolina as being usually cultivated, five dollars per acre for each acre thereof returned on the proper tax book; to the owners of all other lands,

in the first section of this act in excess of the tax assessed thereon shall be paid to the owners of the land so bid in and resold, or to their legal heirs or representatives." We think this proviso does not apply to the owners of lands described in the first clause of the section.

A perusal of the entire act shows that its purpose was to pay back to the States or to individual citizens of States

---

one dollar per acre for each acre thereof returned on said tax book : *Provided*, That in all cases where such owners, or persons claiming under them, have redeemed or purchased said lands, or any part thereof, from the United States, they shall not receive compensation for such part so redeemed or purchased; and any sum or sums held or to be held by the said State of South Carolina in trust for any such owner under section three of this act shall be deducted from the sum due to such owner under the provisions of this section : *And provided further*, That in all cases where said owners have heretofore received from the United States the surplus proceeds arising from the sale of their lands, such sums shall be deducted from the sum which they are entitled to receive under this act. That in all cases where persons, while serving in the Army or Navy or Marine Corps of the United States, or who had been honorably discharged from said service, purchased any of said lands under section eleven of the act of Congress approved June seventh, eighteen hundred and sixty-two, and such lands afterwards reverted to the United States, it shall be the duty of the Secretary of the Treasury to pay to such persons as shall in each case apply therefor, or to their heirs at law, devisees or grantees, in good faith and for valuable consideration, whatever sum was so paid to the United States in such case. That before paying any money to such persons the Secretary of the Treasury shall require the person or persons entitled to receive the same to execute a release of all claims and demands of every kind and description whatever against the United States arising out of the execution of said acts, and also a release of all right, title and interest in and to the said lands. That there is hereby appropriated, out of any money in the Treasury not otherwise appropriated, the sum of five hundred thousand dollars, or so much thereof as may be necessary to pay for said lots and lands, which sum shall include all moneys in the Treasury derived in any manner from the enforcement of said acts in said parishes, and not otherwise appropriated. That section one thousand and sixty-three of the Revised Statutes is hereby made applicable to claims arising under this act without limitation as to the amount involved in such claim : *And provided further*, That any sum or sums of money received into the Treasury of the United States from the sale of lands bid in for taxes in any State under the laws described in the first section of this act in excess of the tax assessed thereon shall be paid to the owners of the land so bid in and resold, or to their legal heirs or representatives.

Approved, March 2, 1891.

the amounts of money received from them in the course of the execution of the direct tax act of 1861 and the acts amendatory thereof. The first section of the act provides for the crediting by the Secretary of the Treasury to each State, etc., a sum equal to all collections by set off or otherwise made from said States or from any of the citizens or inhabitants thereof or other persons, under the act of Congress therein mentioned. Provision is thus made for the amount that had been collected by the United States.

The second section provides for the remission and relinquishment of all moneys still due to the United States under the direct tax apportioned by section 8 of the above-mentioned act of Congress. The third section appropriates moneys for the purpose of reimbursing each State for all money found due under the provisions of the act, and various conditions are therein imposed relative to the payment of such moneys. By the first clause of the fourth section special provision is made for the payment to the legal owners or their heirs of such lands as were sold in the parishes of St. Helena and St. Luke's in the State of South Carolina under this direct tax act. Those owners or their representatives were to be paid for their lands which had been sold, and the value thereof was to be ascertained in the manner provided by the fourth section. Full and special provision was thus made in the clauses preceeding the last clause of section 4 for the owners of lands which had been sold under the direct tax act in the parishes of St. Helena and St. Luke's in the State of South Carolina. The reimbursement of the owners in those particular parishes for their lands which had been sold was to be after the standard which was provided for in the clauses quoted.

There were, however, cases where lands had been sold under this direct tax act in other parishes of the State of South Carolina and in other States. There was added to the act of 1891 the last clause of section 4, which would cover all such cases, and we are of opinion that this last clause does not refer to or cover the cases of those owners who are mentioned in the first clause of the same section. Otherwise this curious result might, and in this particular case would, follow. The owners of the

land at the time of its sale would recover under the first clause a greater amount than the government actually received upon its resale of the land pursuant to the provisions of the direct tax act. That result would be accomplished by the rule provided in the first clause for arriving at the sum to be paid by the government without reference to the amount actually received by it. But in addition to that and under the provisions of the last clause as construed by plaintiffs in error, the owners would be entitled to recover all the moneys received into the Treasury of the United States upon the sale of such lands for taxes, under the direct tax act, in excess of the taxes assessed thereon. In this case these claimants have already obtained judgment against the government for $5680.60, and all that the government has received upon the sale of the property (above the taxes on such land, which were $91.52) is $5003.41. By that judgment, therefore, the government must pay nearly six hundred dollars more than it ever received on account of the land, and in addition to that, if the claimants' interpretation of the statute be the correct one, the government must pay five thousand dollars more to the owners of the same lands. We cannot think that this was the intention of Congress. To give back as much as it has received over and above the original tax would seem to be dealing with a good deal of liberality with the owners. The fact is well known as a matter of contemporaneous history, and it was so stated by counsel on the argument, that upon the sale of lands which the United States had bid in by virtue of the provisions of the direct tax act of 1861, and which were sold thereafter under the provisions of section 11 of the act of June 7, 1862, c. 98, entitled "An act for the collection of direct taxes in insurrectionary districts within the United States, and for other purposes," 12 Stat. 422, the amounts of such sales were frequently and generally very much less than the real value of the property sold. This was no fault of the government, however, and resulted in no benefit to it. By the rule adopted in the first clause of section 4 of the act of 1891 for ascertaining the amount which was to be paid the former owners of the property that had been sold, the sum which the United States

would have to pay to those legal owners might and probably would be much in excess of the sums which the government had actually received, so that in numerous cases there would be a pure gratuity on the part of the government to those owners. The language would have to be very plain to call for such a construction of the last proviso in section 4 as would give in addition to a gratuity a still further sum amounting to the surplus received by the government over and above the amount of the tax levied upon the property sold. The fact that there were lands sold in other parishes than those named, in the State of South Carolina, and also lands lying in other States, furnishes a rational and proper foundation for the last proviso in section 4 of the act of 1891, without construing it to involve these owners who had already been specially provided for. There is full opportunity thus given for the application of the clause in question to other landowners without including within its benefits the owners of those lands who had already been particularly mentioned and provided for by other clauses in the same section. It is true that if the language used in that last clause be given its widest and broadest application it would include all owners of real estate which had been sold in any portion of the country under the provisions of the direct tax act. But we think a perusal of the whole act prevents our giving this unlimited construction, because to do so would conflict with what we think was the intention of Congress, gathered from the provisions of the whole act. Under such circumstances it is not only the right but it is the plain duty of the court to limit by a proper construction the otherwise boundless application of the general language used in the statute. As was said by Mr. Chief Justice Taney : "It is undoubtedly the duty of the court to ascertain the meaning of the legislature from the words used in the statute, and the subject-matter to which it relates ; and to restrain its operation within narrower limits than its words import if the court are satisfied that the literal meaning of its language would extend to cases which the legislature never designed to embrace in it." *Brewer* v. *Blougher*, 14 Pet. 178, at 198 ; *Petri* v. *Commercial National Bank of Chicago*, 142 U. S. 644, 650.

It is true that, in the first case cited, the court refused to limit the application of the statute as contended for by one of the parties to the controversy, but such refusal was based on the view of the statute taken by the court, which was that the intention of the legislature was not so plainly within the contention of counsel as to permit of the limitation in that case. The rule for the construction of a statute and of the duty of the court was given as above stated.

In this case we think the intention of Congress was plain, and that the general language of the last clause of section 4 should not be held to include the class of owners of lands mentioned in the first clause of the same section, for whose case special. provision was therein made. We think that the construction given by the Court of Claims to the statute of 1891, as set forth in its opinion in *Sams* v. *United States*, 27 C. Cl., *supra*, was correct, and its judgment in this case should, therefore, be

*Affirmed.*