## PRYOR v. NATIONAL LEAD CO.
### No. 10756.

Circuit Court of Appeals, Eighth Circuit.
Jan. 27, 1937.

Charles A. Lich, of St. Louis, Mo. (William S. Connor and C. O. Inman, both of St. Louis, Mo., on the brief), for appellant.

George T. Priest, of St. Louis, Mo. (C. S. Cullenbine and Robert E. Moloney, both of St. Louis, Mo., Harry O. Smith, of Farmington, Mo., and Boyle & Priest, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

Wilse Pryor brought this action against the National Lead Company and the St. Louis Smelting & Refining Company to recover damages for an occupational disease alleged to have been contracted by the plaintiff while employed in the defendants' lead mines. The case was commenced in the circuit court of the city of St. Louis, and removed, as a separable controversy, to the United States District Court for the Eastern District of Missouri by the Lead Company, a foreign corporation doing business in Missouri.

The plaintiff, in his amended petition, alleged: That on September 1, 1932, and for many years prior thereto, he was continuously employed by the defendants at their plants doing various kinds of work but mainly engaged in operating a drilling machine; that during the process of mining and operating the drilling machine, dusts containing lead and other chemicals and metals were created and spread

throughout the inclosures where the plaintiff worked; that as a result of inhaling these dusts daily, the plaintiff slowly contracted pneumoconiosis and an incipient tubercular condition, which diseases had not progressed sufficiently to incapacitate him or for their existence to be ascertained until shortly before September 1, 1932. The petition contains twelve specific "assignments of negligence." The first four are based on the common law and for the purposes of this appeal may be disregarded. The fifth, sixth, seventh, and eighth are based on sections 13254, 13255, and 13264, Mo.Rev.St.1929 (Mo.St.Ann. §§ 13254, 13255, 13264, pp. 4804, 4805, 4808), and are, in substance, that the defendants were negligent in failing to furnish to the plaintiff working clothes and an adequate approved respirator; in failing to cause the plaintiff to be examined at least once a month by a licensed and reputable physician; and in failing to post in a conspicuous place in the mine a notice of the known dangers to the health of employees incident to the work, and instructions for avoiding the consequences thereof. The ninth, tenth, eleventh, and twelfth "assignments of negligence" are based on certain provisions of the Missouri Mining Statutes, sections 13624, 13662, and 13664, Mo.Rev.St.1929 (Mo.St.Ann. §§ 13624, 13662, 13664, pp. 5141, 5159, 5160), and are, in substance, that defendants were negligent in failing to "provide facilities" and to permit employees working in the mines to come above ground for one hour to eat their noon meal; in failing to maintain an independent water line so arranged that employees by sprinkling could prevent dust from rising; in failing to provide for the plaintiff and other employees a dressing room, locker, and adequate washing facilities; and in failing to provide sanitary drinking devices. These "assignments of negligence" are followed by an allegation that the plaintiff has suffered and will continue to suffer great pain, that his earning capacity has been greatly reduced, and that he has been and will be put to great medical expense. The petition ends with a prayer for $50,000 damages.

The defendant Lead Company filed a written motion to strike certain of the allegations of negligence, including the alleged failure to furnish respirators, the failure to have the plaintiff examined once a month, and the failure to post notices of the dangers incident to the employment. The motion, so far as it relates to the enumerated allegations above, was founded upon the ground that the statutes upon which such allegations were based, sections 13254, 13255, and 13264, Mo.Rev.St. 1929, were not applicable to persons engaged in mining. The motion was granted as to the allegations based on those statutes and as to certain other allegations not here material.

The defendant Lead Company in its answer denied every allegation in the amended petition, and alleged, among other things, that the so-called Mining Code of Missouri, and particularly article 2 (sections 13626–13684) of chapter 107, Mo. Rev.St.1929 (Mo.St.Ann. §§ 13626–13684, p. 5143 et seq.), limited the rights and remedies, as to alleged occupational diseases, of persons employed in mines to the provisions of that code.

The plaintiff's reply was in the nature of a general denial.

Upon the trial, after the introduction of the plaintiff's evidence, the case was dismissed as to the St. Louis Smelting & Refining Company, and a verdict was directed for the Lead Company (hereinafter referred to as the defendant). From the judgment entered on the verdict this appeal is taken.

The only question submitted for determination is whether sections 13254, 13255, and 13264, Mo.Rev.St.1929, are applicable to employers and employees engaged exclusively in mining. It is conceded that if they are not applicable to such employers and employees, the judgment must be affirmed.

It is contended by the plaintiff that those sections were intended to and do apply to persons engaged in mining, notwithstanding the fact that article 2 (sections 13626–13684) of chapter 107, Mo.Rev.St. 1929, relates specifically to the inspection of mines and the safety of miners. The defendant, on the other hand, contends that the question presented by the plaintiff can not be considered because the motion to strike was not made a part of the record by a bill of exceptions; but that, if the question be considered, sections 13254, 13255, and 13264, Mo.Rev.St.1929, and in fact the entire act of which those sections are a part (Mo.Laws 1913, p. 402 [Mo.St. Ann. § 13252 et seq., p. 4803 et seq.]), should be construed as applicable only to employees working in factories.

■ The motion to strike constituted a demurrer to certain portions of the amended petition and was a part of the primary record. Hence a bill of exceptions was unnecessary to present to this court for review the ruling thereon. Board of Com'rs of City and County of Denver v. Home Savings Bank, 236 U.S. 101, 103, 104, 35 S.Ct. 265, 59 L.Ed. 485.

Sections 13254, 13255, and 13264 of the Mo.Rev.St.1929 (Mo.St.Ann. §§ 13254, 13255, 13264, pp. 4804, 4805, 4808), read as follows:

§ 13254. "Every employer in this state to which this article applies shall provide for and place at the disposal of the employes so engaged, and shall maintain in good condition without cost to the employes, working clothes to be kept and used exclusively by such employes while at work and all employes therein shall be required at all times while they are at work to use and wear such clothing; and in all processes of manufacture or labor referred to in this section which are productive of noxious or poisonous dusts, adequate and approved respirators shall be furnished and maintained by the employer in good condition and without cost to the employes, and such employes shall use such respirators at all times while engaged in any work productive of noxious or poisonous dusts."

§ 13255. "Every employer engaged in carrying on any process or manufacture referred to in section 13253 [section 2 of Mo.Laws 1913, p. 402, hereinafter quoted] shall, as often as once every calendar month, cause all employes who come into direct contact with the poisonous agencies or injurious processes referred to in section 13253, to be examined by a competent licensed and reputable physician for the purpose of ascertaining if there exists in any employe any industrial or occupational disease or illness or any disease or illness due or incident to the character of the work in which the employe is engaged."

§ 13264. "For the purpose of disseminating a general knowledge of the provisions of this article and of the dangers to the health of employes in any work or process covered by the provisions of this article, the employer shall post in a conspicuous place in every room or apartment in which any such work or process is carried on, appropriate notices of the known dangers to the health of any such employes arising from such work or process, and

simple instructions as to any known means of avoiding, so far as possible, the injurious consequences thereof, and the commissioner of labor and industrial inspection shall have prepared a notice covering the salient features of this article, and furnished a reasonable number of copies thereof to employers in this state affected by the provisions of this article, which notice shall be posted by every such employer in a conspicuous place in every room or apartment in such place of employment. The notices required by this section shall be printed on cardboard of suitable character and the type used shall be such as to make them easily legible."

■ No decision of the Missouri Supreme Court construing the above-quoted statutes as applicable to miners has been found and none is cited in the briefs. It therefore becomes necessary for this court to exercise an independent judgment in interpreting those statutes. Hineline v. Minneapolis Honeywell Regulator Co. (C.C.A. 8) 78 F.(2d) 854, 856; Davies v. Mills Novelty Co. (C.C.A.8) 70 F.(2d) 424, 426; Kansas City, Mo., v. Johnson (C.C.A.8) 70 F.(2d) 360, 361. In determining the applicability to this case of sections 13254, 13255, and 13264, Mo.Rev.St.1929, (sections 3, 4, and 13 of the original act; Mo. Laws 1913, p. 402), the act must be examined as a whole to determine the intent of the Legislature. Manufacturers' Land & Imp. Co. v. U. S., etc., Fleet Corp., 264 U. S. 250, 254, 44 S.Ct. 314, 315, 68 L.Ed. 664; Cherokee Intermarriage Cases, 203 U.S. 76, 89, 27 S.Ct. 29, 51 L.Ed. 96; McKee v. United States, 164 U.S. 287, 293, 17 S.Ct. 92, 41 L.Ed. 437; McBroom v. Scottish Investment Co., 153 U.S. 318, 323, 14 S.Ct. 852, 38 L.Ed. 729. In Cherokee Intermarriage Cases, supra, the Supreme Court said, at page 89 of 203 U.S., 27 S.Ct. 29, 34, 51 L.Ed. 96: "The doctrine is familiar that the language of a statute is to be interpreted in the light of the particular matter in hand and the object sought to be accomplished, as manifested by other parts of the act, and the words used may be qualified by their surroundings and connections."

■ The act (Mo.Laws 1913, p. 402) is entitled, "An Act to promote the public health by protecting certain employees in this state from the dangers of occupational or industrial diseases, providing penalties, and providing for the enforcement thereof." Because of the use of the

words "certain employees" in the title of the act, it is apparent that the Legislature did not intend the act to cover every employee in the state.

Section 1 of the act provides: "That every employer of labor in this state engaged in carrying on any work, trade or process which may produce any illness or disease peculiar to the work or process carried on, or which subjects the employee to the danger of illness or disease incident to such work, trade or process, to which employees are exposed, shall for the protection of all employees engaged in such work, trade or process, adopt and provide approved and effective devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work, trade or process."

Section 2 provides that: "The carrying on of any process, or manufacture, or labor in this state in which antimony, arsenic, brass, copper, lead, mercury, phosphorus, zinc, their alloys or salts or any poisonous chemicals, minerals, acids, fumes, vapors, gases, or other substances, are generated or used, employed or handled by the employees in harmful quantities, or under harmful conditions, or come in contact with in a harmful way, are hereby declared to be especially dangerous to the health of the employees."

Section 6 (now section 13257 [Mo.St. Ann. § 13257, p. 4806]) imposes a duty upon the secretary of the state board of health to transmit a copy of the report of any physician who examined an employee as required by the act to the "state factory inspector" (now commissioner of labor and industrial inspection; see Mo.Rev.St.1929, §§ 13167, 13218 [Mo.St.Ann. §§ 13167, 13218, pp. 4761, 4779]), "and a copy to the *superintendent of the factory* in which the employee is supposed to have contracted his ailment." (Italics supplied.)

Section 12 (now section 13263 [Mo.St. Ann. § 13263, p. 4808]) makes it the duty of the "state factory inspector" to enforce the provisions of the act and to inspect at least once a year all places of employment covered by the provisions of the act.

Section 13 (set out above as section 13264, Mo.Rev.St.1929 [Mo.St.Ann. § 13264, p. 4808]) requires the "state factory inspector" to "have prepared a notice covering the salient features of this act, and furnish a reasonable number of copies thereof to employers in this state, affected by the provisions of this act, which notice shall be posted by every such employer in a conspicuous place in every room or apartment in such place of employment."

Section 14 (now section 13265 [Mo.St. Ann. § 13265, p. 4809]) provides a penalty for any person, firm or corporation violating any of the provisions of the act or who obstructs or interferes with any examination or investigation being made by the "state department of factory inspection."

In 1913, the year when the act under discussion was passed, the powers and duties of the state factory inspector were defined in section 7824, Mo.Rev.St.1909 (now section 13218 [Mo.St.Ann. § 13218, p. 4779]), which provides that "it shall be the duty of the factory inspector, his assistants or deputy inspectors, to make not less than two inspections during each year of all factories, warehouses, freight depots, machine shops, * * * hotels, restaurants, bowling alleys, theatres, concert halls or places of public amusement, and other manufacturing, mechanical and mercantile establishments and workshops, in all cities having a population of ten thousand inhabitants or more." The duty was also imposed upon the factory inspector to enforce all laws relating to the inspection of the enumerated establishments and all municipal ordinances relating to such establishments. In 1919 the powers and duties of the factory inspector were vested in an "industrial inspector" (Mo.Laws 1919, p. 452); and in 1927 a "department of labor and industrial inspection" was created and all the powers which had been conferred on the industrial inspector were transferred to it and conferred upon a "commissioner of labor and industrial inspection." Mo.Laws 1927, p. 292 (Mo.St. Ann. § 13166 et seq., p. 4760 et seq.). Nothing in any of these latter acts changes, in any respect material to the case at bar, the scope of the authority originally vested in the state factory inspector.

That the Legislature imposed upon the factory inspector, whose duties were restricted to inspection and enforcement of laws concerning the establishments specified above, the duty to administer and enforce the act here in question, is, we think, persuasive that the act, in so far as it relates to employees handling minerals, was intended to apply to those engaged in processing, and not to those engaged in mining. So also is the reference in section 6 to the "superintendent of the factory

in which the employee is supposed to have contracted his ailment."

There are other indications that it was not intended by the Missouri Legislature that Laws 1913, p. 402, should apply to persons engaged in mining. That act was approved March 27, 1913, and bore no emergency clause. Two days earlier an act (Mo.Laws 1913, p. 409) was approved, which created a "bureau of mines" and directed the appointment by the Governor of a "chief mine inspector" whose duty was to classify, supervise and direct the work of inspecting mines. This act bore an emergency clause (section 2) reciting that "the fact that closer and better inspection is at once needed for the health and safety to the miners, creates an emergency, and this act shall, therefore, take effect and be in force from and after its passage and approval." It seems improbable that the Legislature, at approximately the same time that it provided for improved mine inspection by a chief mine inspector, passed the act with which we are here concerned with the intention that it should apply to miners, with exclusive administrative authority vested in the state factory inspector.

As further evidence that no such intention existed, an act was passed in 1915 (Mo.Laws 1915, p. 329) directing the mining inspectors to inspect all underground excavations in lead, zinc, and other mines other than coal mines, for the purpose of discovering dust in injurious quantities, and, upon discovering dust, to notify the owner, who should then erect and maintain an independent water line so arranged that the dust could be controlled by sprinkling.

The two acts above cited which relate to mines and mining are now incorporated in Mo.Rev.St.1929, chap. 107, art. 2, as sections 13651 and 13662 (Mo.St.Ann. §§ 13651, 13662, pp. 5154, 5159). That article of chapter 107 is entitled, "Inspection of Mines and Safety of Miners—State Bureau of Mines," and contains provisions for inspection, ventilation, dust control, sanitation, and other safety measures relating specifically to miners.

The occupational disease statutes of Missouri have been in effect for some twenty-three years. So far as we are advised there has not been during that period a single legislative, judicial, or administrative act or declaration which lends any color to appellant's contention that these statutes (sections 13254, 13255, and 13264, Mo.Rev.St.1929) are to be regarded as applicable to miners. We are asked to hold that they are applicable, in the face of definite indications that that was not the intention. It is scarcely conceivable to us that the Legislature of Missouri would deal with the safety of miners in two separate acts passed at approximately the same time, placing administrative functions with respect to the same subject-matter in the hands of two separate departments of the state government, one of which was created to deal exclusively with mining, and the other with manufacturing and processing. If the Supreme Court of Missouri shall hereafter construe these occupational disease statutes as applicable to mines and miners, this court will follow its construction. As presently advised, we are of the opinion that the court below was right.

The judgment is affirmed.