**UNITED STATES v. ABOUT 151.682 ACRES OF LAND IN McHENRY COUNTY, ILL.**

**SAME v. JURSICH.**

**SAME v. LOJK.**

**Nos. 6579, 6580.**

Circuit Court of Appeals, Seventh Circuit.

Nov. 18, 1938.

Alfred E. Roth, of Chicago, Ill., for appellants.

Michael L. Igoe, United States Attorney, and Daniel D. Glasser, Assistant United States Attorney, both of Chicago, Ill., Attorneys for Libellant-Appellee.

Elbert H. Loyd and Joseph H. Collier, Attorneys U. S. Treasury Department, both of Chicago, Ill., of Counsel.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

No. 6579 is a libel action for the forfeiture of certain real and personal property, including a farm of 151 acres located in McHenry County, Illinois, a tractor and various stills and distilling apparatus used in the production of distilled spirits with intent to defraud the Government of taxes imposed thereon. The libel inter alia charged that the interests of claimants, John Jursich and Elinor Gladys Jursich in said real estate were forfeited because they knowingly suffered and permitted the business of a distiller to be there carried on or connived thereat; and because they knowingly suffered and permitted the premises to be used for ingress and egress to and from the illicit distillery situated thereon. 26 U.S.C.A. § 1184.

In view of the question which we regard as controlling, hereinafter discussed, there is no occasion to relate, in detail, the facts and circumstances. Briefly they disclose that John Jursich purchased the farm involved in 1933, taking title to the same in his daughter, Elinor Gladys Jursich, then 17 years of age. The farm is located about 2,000 feet from a public highway and is entered by a lane extending therefrom. Jursich and his family, shortly after the purchase of the farm, moved thereto where they engaged in farming until about March 1, 1937, at which time the farm was sold to one John W. Horn for the sum of $15,000, to be paid according to the terms of a contract for warranty deed executed by the parties. Shortly prior to this time, Jursich conducted a public sale of his livestock, farming equipment and other personal property and moved with his family to the City of Chicago. On April 22, 1937, officers of the Alcohol Tax Unit and other officers, armed with a search warrant, went to the farm where they found and seized in the barn a 1,700 gallon St. Louis type still, a 1,500 gallon recooking still, about 45,000 gallons of mash in ten vats, each with a capacity of 5,000 gallons, and still equipment including a steam boiler used to operate the distillery. Two men were found in the barn which housed the still and two others, who had been observed by the officers carrying supplies to the Jursich farm, were seen on an adjacent farm at the time of the seizure.

There is no claim by the Government, either in the allegations of its libel, or otherwise, that Jursich was the owner, possessor or had anything to do with the actual operation of the still, but it is charged that he connived at and knowingly suffered and permitted the business of a distiller to be transacted on said real estate and knowingly permitted the same premises to be used as a means of ingress and egress. There was attached to the libel a copy of the contract for warranty deed, and also an exhibit referred to as a farm lease between John W. Horn, lessor, and Wm. Gehrke, lessee, by which the latter acquired an interest as lessee to all of the land in controversy except ten acres on which was located the dwelling house and barn. The lease appears to be of standard form containing the usual terms and conditions, with reference to the cultivation of the farm. The purported lease, however, is not signed by the respective parties and nowhere in the record is it otherwise mentioned or considered, and there is nothing disclosed with reference to the purported lessee, Wm. Gehrke, other than it appears that a person by the same name was the owner of an adjacent farm.

Claimants answered the libel, disclaiming all knowledge as to the distillery

and prayed to be restored to the ownership, custody and control of the forfeited property. The cause was submitted to a jury solely on the issue of knowledge, which was determined adversely to claimants, and after denial of motion for new trial a decree of forfeiture was entered. It is from this decree the appeal is taken. Numerous errors are assigned which, with the exception of the one hereinafter discussed, do not require more than passing notice. It is claimed the court erred in overruling claimants' motion for a directed verdict because of the insufficiency of the evidence to establish knowledge on the part of claimants. We find, however, the evidence bearing upon this question sufficient for the consideration of a jury and under well established authority, it is not within our province to retry an appropriate jury question. In fact, we are convinced from the record that the jury could not well have done otherwise than found the requisite knowledge. It is also claimed the burden was on the Government to establish its libel beyond a reasonable doubt. This contention is answered and disposed of adversely to claimants in U. S. v. Regan, 232 U.S. 37, 49, 34 S.Ct. 213, 58 L.Ed. 494, wherein the cases cited and relied upon by claimants are distinguished. We likewise find no error which could have harmed claimants in certain questions propounded by the court, in the cross examination of the claimant, Jursich, or in the court's charge to the jury.

There is a question, however, which we regard as important, the answer to which requires a construction of certain language found in Sec. 1184, upon which the libel is founded and which, so far as here pertinent, reads: " * * * and all the right, title, and interest of such person in the lot or tract of land on which such distillery is situated, and all right, title, and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or has connived at the same; and all personal property owned by or in possession of any person who has permitted or suffered any building, yard, or inclosure, or any part thereof, to be used for purposes of ingress or egress to or from such distillery which shall be found in any such building, yard, or inclosure, and all the right, title, and interest of every person in any premises used for ingress or egress to or from such distillery, who has knowingly suffered or permitted such premises

to be used for such ingress or egress, shall be forfeited to the United States."

To be more specific, the solution depends upon the construction of the following phrase of the paragraph just quoted "and all the right, title, and interest, of such person in the lot or tract of land on which such distillery is situated."

The position of the Government is aptly stated in its brief: "The statute does not limit the forfeiture to the distillery and the specific real estate upon which it is located. It does not limit the forfeiture to the part of the 'lot or tract of land' used in connection with the carrying on of the illicit distillery business. The statute forfeits the 'lot or tract of land' on which the distillery is situated, without any reservation or restriction whatsoever."

On the other hand it is claimants' contention that the forfeiture must be limited to the "lot or tract of land" used in connection with the carrying on of the business of a distillery and does not include such portions of the farm as are in no way related to or connected with such operation.

With the exception of one District Court case hereinafter discussed (U. S. v. Certain Piece of Land, 25 Fed.Cas. p. 366, No. 14,767), we are cited to no authority and our own research convinces us there is none where this question has been raised or decided, and this, notwithstanding the fact that the statute, either in its present or similar form, has been in effect since February 8, 1875. Many cases are cited by the Government which it is claimed lend support to its theory, foremost of which is U. S. v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555. True, this is a leading case on the forfeiture of property under this statute, yet it throws little, if any, light on the instant question. The essential matter there decided was that the statute did not permit the forfeiture of land and buildings as against the right, title, and interest of those other than the distiller or of persons having consented to the carrying on of such business, or having knowledge of the same. The court did approve the forfeiture of the real estate described in the libel, but it is important to note, as stated in the opinion, page 11, 10 S.Ct. page 245: "The real estate was a single lot of land, part of which was covered by a building and sheds opening by doors into one another, and the rest of which was a yard connected with the buildings." The situation thus described is far

different from the one here involved where a "tract of land" consisting of 151 acres is sought to be forfeited without any showing as to the part or portion of said land used or related to the distillery operation.

Next we come to the case of Norbriga v. United States, 1 Cir., 55 F.2d 146, in which the forfeiture was sustained, but the court in doing so said on page 149: "From the description of the premises, it is evident that the barn in which the still was found, garage and dwelling house were all located on a single lot of land designated as 'Lot numbered eighty-eight (88) on that plat entitled "Samoset Plat."' The gas pipe that supplied gas for the still was connected with the gas pipe in the cellar of the dwelling house. As constructed, the still could not be operated without this house connection. The decree of the District Court properly included the entire lot with the barn, garage, and dwelling house thereon."

There is no comfort for the Government in this case—in fact, it seems the court justified the forfeiture of the buildings, located on a single lot, because of their relation to the still.

In Southern Surety Company et al. v. Motlow, 6 Cir., 61 F.2d 464, we find a similar situation. There again the court considered the forfeiture of a lot and certain buildings. On page 466 it is said: "All of the buildings were located on a single lot and were used in connection with one industry. It was not practicable to seize part of the property and not all of it, nor was it possible for appellee to use or rent the cattle pen and rear of the premises while the government was holding the warehouse, bottling room, office and file rooms. If, therefore, the government had seized only the warehouse and other rooms specifically covered by the bond, this would have prevented the appellee from using all other parts of the property."

In other words, it is pointed out that the buildings forfeited were used in connection with the industry.

Another case is that of U. S. v. Premises at 1707-9 and 1715 St. Marks Avenue, D.C., 55 F.2d 271. The court approved of a forfeiture of all property located upon the described lots, but it is significant to note the situation there presented from what the court said on page 273: "The entire premises were covered by a system of wiring, the purpose of which was to give warning to persons working in the premises."

While in none of the cases so far discussed was the court presented with a question such as we have here, yet it is interesting, and, we think important, to observe that in each of them there seems to run through the minds of the respective courts the thought that there must be some connection or relation between the property sought to be forfeited and the illegal thing or act located or performed on such property.

In construing the statute before us and in determining the legislative intent, it is helpful to make reference to other similar language contained in various sections of the Revenue Act, all found in Title 26, U.S.C.A. Sec. 1165 makes provision for a distiller's bond and requires "that he shall not suffer the lot or tract of land on which the distillery stands, or any part thereof * * * to be encumbered by mortgage, judgment * * *." It is then provided that any person violating the provision shall "forfeit the distillery, distilling apparatus, and all real estate and premises connected therewith." It will be noted in this provision that only such real estate may be forfeited as is connected with the distillery or distilling apparatus. Sec. 1166 precludes the approval of a distiller's bond unless he is the owner in fee "of the lot or tract of land on which the distillery is situated," and further that "in case of the forfeiture of the distillery premises, or of any part thereof * * * the title of the same shall vest in the United States." It will be observed in this section that the forfeiture is applicable only to the distillery premises or some part thereof. Sec. 1192, among other things, provides for the manner in which the books of a distiller must be kept, and makes provision for forfeiture as follows: "* * * the distillery, distilling apparatus, and the lot or tract of land on which it stands, and all personal property on said premises used in the business there carried on, shall be forfeited to the United States."

It will be seen that this language is almost identical with that contained in Sec. 1184, under consideration. In each of the paragraphs a literal reading might require the forfeiture of the "lot or tract of land," irrespective of all circumstances. Sec. 1192 was originally the Act of July 20, 1868, 15 Stat. 132, but so far as here pertinent, con-

tains the same language. The court had before it this section in Dobbins' Distillery v. U. S., 96 U.S. 395, 24 L.Ed. 637, and while the question with which we are now confronted apparently was not specifically raised, yet in discussing the same, the court said, page 401: "Nothing can be plainer in legal decision than the proposition that the offence therein defined is attached primarily to the distillery, and the real and personal property used in connection with the same * * *."

Again the court evidently had in mind the thought that a forfeiture of either real or personal property could be had only as the same was used in connection with the distillery. The language last quoted is again found and approved in Various Items v. United States, 282 U.S. 577, 581, 51 S.Ct. 282, 75 L.Ed. 558. The language used in the various provisions of the Revenue Act as well as that employed by the courts as heretofore related and discussed, leads to the irresistible conclusion that there has always existed, both in the legislative and judicial mind, the belief that to forfeit property a connection must be shown with that which offends.

■ Here we are presented with a situation wherein a forfeiture of a farm consisting of 151 acres has been decreed without any evidence or showing as to the purpose or purposes to which the various parts of the farm were put. For aught that this record shows, the land might have been used in the production of corn, wheat, barley or for any of the many other purposes for which farm land is legitimately employed. It is not certain, from the record, just what buildings were on the land adjacent to the building where the still was seized. Indirectly, we find mentioned a garage and dwelling house other than the barn in which the illegal property was found. We are unable to reach a conclusion that the statute in question was intended to permit the forfeiture of a farm of such magnitude as "a tract of land on which such distillery is situated" without proof that there was a connection or relation between the farm and the distillery. It is conceivable that a farm of this size could be so connected, but as to this we shall not speculate. If this farm can be thus forfeited, we see no reason why one containing double or treble the number of acres would not likewise be subject to forfeiture. In fact, there would be no limit. It is urged that a large still, such as here

found, requires a large farm to hide it, but we are not impressed with the argument that the acreage subject to be condemned can be determined by the size of the still, and certainly such cannot be held as a matter of law.

In the case of United States v. Certain Piece of Land, supra, the District Court had before it the same question as is here presented, wherein it was sought to forfeit a tract of land of 130 acres and decided the same adversely to the Government's contention. In so doing, the court on page 367 said: "The language of the statute is 'lot or tract' of land. The latter word may have been used as synonymous with the former and to indicate a village or town lot which, being of definite boundaries and usually of limited size, might not unreasonably be deemed to be used and occupied for the purposes of the illicit business. An adjoining lot, though owned by the offender, would not under this provision be forfeited. It would be strange if the circumstance that the distillery was situated on an extensive farm in the country, should involve in the forfeiture, pasture, grain and wood lots, orchards, vineyards, dwelling-houses, and even it might be village lots, remote from the scene of operations of the distillery and having no connection with it."

We are reminded that this is the opinion of a District Court rendered seventy years ago and that conditions have greatly changed. Nevertheless, we are impressed with the logic of both the court's reasoning and conclusion.

Our attention is called to United States v. Ryan, 284 U.S. 167, 52 S.Ct. 65, 76 L.Ed. 224, as furnishing light upon the construction to be placed upon a revenue forfeiture statute. There the court had under consideration, Sec. 1620, 26 U.S.C.A., having reference to personal property found in the possession of any person in fraud of the Internal Revenue laws and provides for a forfeiture of "all tools, implements, instruments, and personal property whatsoever, in the place or building * * * where such articles * * * are found." True, it was held in this case that saloon furnishings and equipment of a room in which liquors were dispensed with intent to defraud the Government of taxes, were the subject of forfeiture. The court said, page 176, 52 S.Ct. page 68: "By reason and analogy, as well as by context, we conclude that the general words

'all personal property whatsoever' were intended to include chattels other than the specified tools and implements, but to be restricted to those which, like tools or implements, are related to one or the other of the principal things, or incident to their intended use or disposition in fraud of the revenue."

This case, like others which we have heretofore discussed, to our mind weakens rather than strengthens the Government's position. Here again the court allowed the forfeiture because such "personal property" was related to and incident to the principal thing.

To construe literally the language before us, as the Government would have us do, would, in our judgment, lead to consequences unreasonable and never intended. As was said in McKee v. United States, 164 U.S. 287, 17 S.Ct. 92, 41 L.Ed. 437, quoting from Mr. Justice Taney, page 293, 17 S.Ct. page 95: "It is undoubtedly the duty of the court to ascertain the meaning of the legislature from the words used in the statute, and the subject-matter to which it relates, and to restrain its operation within narrower limits than its words import, if the court are satisfied that the literal meaning of its language would extend to cases which the legislature never designed to embrace in it."

We find, in United States v. Katz et al., 271 U.S. 354, 46 S.Ct. 513, 70 L.Ed. 986, this very pertinent language, page 357, 46 S.Ct. page 514: "All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose." Also see In re Chapman, 166 U.S. 661, 667, 17 S.Ct. 677, 41 L.Ed. 1154.

It is urged, however, that the question is not properly here for review inasmuch as the question was not specifically raised by claimants on motion for a directed verdict, and even if the question had been raised, the burden was upon claimants to show that the Government was seeking a forfeiture of more land than was justified by the circumstances. With this contention we do not agree. The record discloses the question was argued to the court on the motion for a directed verdict and determined. The court took the position and so stated, in substance, that it would take judicial notice that a still of the size and volume of the one involved, under the circumstances presented, would require all the land described in the forfeiture in order to conceal it from the observance of neighbors. Evidently the court did not agree with the Government's theory that the entire farm was subject to forfeiture ipso facto as "a tract of land" merely because there was located in one building the distillery, for if the Government's theory be tenable, there was no occasion for the court's taking judicial notice that the entire farm was necessarily related to the operation of the distillery. As heretofore stated, we are of the opinion that the Government's theory is unsound and we likewise are convinced that the court was without authority to take such judicial notice.

It is essential to keep in mind the character and nature of a forfeiture proceeding. The property is considered as the offender and it is it toward which the charge is directed. As was said in Various Items v. United States, 282 U.S. 577, 581, 51 S.Ct. 282, 284, 75 L.Ed. 558: "A forfeiture proceeding under Rev.St. § 3257 or § 3281 [26 U.S.C.A. §§ 1155(f), 1184, 1397(a) (1)] is in rem. It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted and punished."

If we are right in our conclusion that real property may only be forfeited upon a showing that it is in some manner related to or connected with the distillery operation, it would seem the issue thus presented is one of fact to be determined as such. The burden of making such proof is upon the Government,[1] and it is entitled to a decree for such part only of the

---

[1] United States v. One Distillery et al., 174 U.S. 149, 152, 19 S.Ct. 624, 43 L. Ed. 929; 33 C.J., Par. 314, page 378; Three Packages of Distilled Spirits v. United States, 8 Cir., 129 F. 329, 331; United States v. One Engine & Belting, etc., 3 Cir., 179 F. 698; W. F. Corbin & Co. v. United States, 6 Cir., 181 F. 296, 305.

722

premises described in the libel as is shown to have been so connected or related.

This cause is reversed and remanded for a new trial not inconsistent with the interpretation which we place upon the Statute in controversy.

In Cause No. 6580, there is involved the same matter of forfeiture as that contained in No. 6579 which we have just considered. While separate briefs were filed, the two cases were argued together and may be disposed of in the same manner.

After motion for a new trial had been overruled in the principal proceeding, but before the entry of a decree, the claimant herein, Joe Lojk, petitioned the court for leave to file an answer and claim and to be heard concerning his interest in the farm. The principal error relied upon by claimant is the action of the court in denying such motion for leave to answer and claim. Inasmuch as we reverse and remand for a new trial, the principal cause, we think this cause should be reversed so that the court may be free to determine any rights which claimant may present.

Reversed.