# THE ATTORNEY GENERAL
# OF TEXAS



AUSTIN 11, TEXAS

GERALD C. MANN
XXXWEXXXWWXXXXXXXXX
ATTORNEY GENERAL

April 4, 1939

Honorable George H. Sheppard      Opinion No. O-545
Comptroller of Public Accounts    Re:  "Trinity-Mix" is cement
Austin, Texas                          and subject to cement tax.

Dear Sir:

This is in answer to your letter of March 24, 1939, which reads as follows:

> "The question has arisen in this department as to the taxability of "Trinity Mix" (a sort of mortar preparation put out by certain cement companies). The attached copy of a letter written by the cement company to our Tax Supervisor, Mr. R.C. Bearden, explains fully the ingredients of this mortar.
>
> "I will thank you to advise this department whether this product is taxable under the statute levying a tax on cement."

The attached copy of the letter to Mr. Bearden that you refer to which is from the attorneys for the cement company concerned, reads, in part as follows:

> "The product hereinabove referred to, manufactured by Trinity Portland Cement Company, which is under discussion at this time, is what is commonly termed or known as ordinary masonry mortar and contains some ingredients which are likewise contained in cement, nevertheless the finished products are entirely different. Cement, as the writer understands it, may contain various forms of stone which are burned under high heat and treated in various forms. After being burned by high heat and treated, the product comes out in what is commonly termed among cement people as a clinker form, that is, in round pellets. These clinkers are then ground very fine and sifted through meshes or screens of a very fine sieve, that is, so fine that the sieve, as I understand it, will hold water. After receiving this treatment, the fine powder is treated. During this same treatment or perhaps there-afterwards, this pulverized clinker is treated with gypsum, throughly mixing the two products and you then in turn have what is commonly known and understood among the cement industry as cement, and generally and in fact commonly known as Portland Cement, which has a well defined and well understood meaning among persons conversant with the cement industry. This finished product

which is termed and known as cement is used for many and sundry purposes, such as making mortar, plaster, concrete and many times in its raw state by adding water to it and for numerous other similar purposes.

"The product here under consideration, which is commonly known as Trinity Portland Cement Company's finished product of mortar, is manufactured, as the writer understands it, in the following manner. The clinkers above referred to, without being ground and without being treated with gypsum, are taken in their raw state as they come from the furnace, mixed with lime rock in its raw state, containing approximately 47 or 48 per cent of lime after the same has been burned, treated and reduced to lime. This lime rock in its raw state, without being treated in any particular, is ground and pulverized with the clinkers, both products being mixed and placed through a sieve and then you have the finished product. The percentage of lime rock and clinkers used in this finished product vary, depending upon the strength or durability or mortar desired. This finished product is used as mortar, as I understand it, and is nothing in fact but a prepared mortar."

The statute in question is paragraph (a) of House Bill No. 251, Acts 1931, Forty-second Legislature, p. 355, ch. 212, now codified as Section 41a of Article 7047 of Vernon's Annotated Revised Civil Statutes of Texas, which reads as follows:

"There is hereby imposed a tax of one and one-fourth (1-¼) cents on the one hundred (100) pounds, or fractional part thereof, of cement on every person in this State manufacturing or producing in and/or importing cement into this State, and who thereafter distributes, sells or uses the same in intrastate commerce. Said tax shall accrue on and is imposed on the first intrastate distribution, sale or use; provided, however, no tax shall be paid except on one sale, distribution or use. The person liable for said tax is hereby defined to be a 'distributor.'"

As the word "cement" is not defined in the statute, it must be given the meaning in which it is ordinarily used and understood. State v. Yturria, 109 Tex. 220, 204 S.W. 315; and Bradford v. Hunt, 15 Fed. Supp. 426.

Webster's New International Dictionary, Second Edition, defines the word "cement" as follows:

"A substance which is mixed with water and used in a soft or pasty state to join stones or bricks in a building, to cover floors, etc., and which afterwards becomes hard like stone; esp., such a substance made with lime, or a calcined mixture of clay and limestone."

Very few courts have made an expression on the word "cement", and about the only definition of the word as given by a court is in the case of Brunswicke-Balke-Collender Co. v. Seamless Rubber Company, 27 Fed. (2d) 925, as follows:

> "The term 'cement', as commonly used, implies a substance dissolved in a solvent, and when the solvent is evaporated the cement hardens, and binds the layers of material together."

In 14 Corpus Juris Secundum 61, we find a definition as follows:

> "In its ordinary commercial sense, the work has been defined as a substance used in a soft or pasty state to join stones or bricks in a building, etc., which afterward becomes hard like stone."

These are definitions of the word as it is ordinarily used and understood.

It seems to be the contention that cement is usually made by a process that results in a product called Portland cement, and that the Legislature did not intend for this tax to apply to cement made by any other process, or to any other kind of cement. We do not agree with that contention. We believe that any product that meets the definition of "cement" as that word is ordinarily used and understood is cement within the terms of the statute. The definitions of cement are not concerned with the process by which it is made, and in determining whether or not a product is cement, we should not look to the method by which it is manufactured. We look to see what the product does and how it operates.

A good discussion of cement is found in Volume 6 of The Encyclopedia Americana at page 189, as follows:

> "A cement is any compound which, under certain conditions, is plastic and under others develops tenacity and can be used for holding together various materials; hence glue, lime, asphaltum, mucilage and solder are cements. By far the most important class of cements, structurally and commercially are the hydraulic cements, compounds of lime, silica and alumina that have the property when mixed with water to a paste of cohering or setting and finally becoming stone hard, even under water. The hydraulic cements may be divided into four classes based on differences in the materials used.
>
> "The four classes of hydraulic building material above mentioned are: (1) Hydraulic lime made from a limestone containing a small proportion of clay (8 to 10 per cent) by burning at a low temperature and slaking the burned rock and water. (2) Hydraulic or natural-rock cement made from a limestone containing a relatively high proportion of clay, by

burning at a low heat and grinding the product to powder. (3)
Portland Cement made from an artificial mixture of carbonate
lime (either chalk, limestone or marl), with a certain pro-
portion of clay, burning at a white heat and grinding the clink-
er to powder. (4) Pozzuolana or slay cement made by mixing
some kinds of finely-ground scoria (volcanic ash) or blast-
furnace slag with a small proportion of slaked lime. Of these
the second and particularly the third are of chief importance
in this country, though the manufacture of slag cement is a
promising industry."

This discussion shows that there are four classes of hydraulic
building cement, one of them being Portland cement. According to
this discussion the cement in question comes within the second class,
which is "hydraulic or natural-rock cement". We believe that all
of these classes of hydraulic building cement, which includes Port-
land cement, and the cement in question, as well as other classes
of cement, come within the definition of cement as that-term is
ordinarily used and understood.

The general question as to what kind and class of cement is subject
to this tax has been heretofore considered by this department and
was answered in a very able opinion dated September 11, 1931, by Mr.
Sidney Benbow, Assistant under attorney General Allred, which opinion
strongly supports our view, and which reads, in part, as follows:

"From an observation of these definitions it can readily be
seen that the term 'cement' has a very broad and not a well
defined or fixed meaning but could include any substance of a
cementitious nature.

"It is a fundamental rule of construction that in the absence
of anything in the context of a statute to the contrary, com-
mon or popular words are to be understood in a popular sense.
Sutherland Statutory Construction, Section 389, page 747;
Gilmer v. Maples, 138 S.W. 1037. And a thing or subject which
is not within the intent and sprit of the statute is not with-
in the statute though within the letter. Sutherland's Statu-
tory Construction, Section 379, page 730; Hawaii v. Manckichi,
190 U.S. 197; Pool v. Simmons, 134 Calif., 621. The words or
clauses may be enlarged or restricted to effectuate the inten-
tion or to harmonize them with other express provisions.
Where general language construed in a broad sense would lead
to absurdity, it may be so restrained. People v. Davenport,
91 N.Y. 574; McKee v. United States, 164 U.S. 287; Sutherland's
Statutory Construction, Section 376, page 721.

"Bearing in mind the above rules of construction, it is the
opinion of the writer that the Legislature intended to impose
the tax upon any substance of a cementitious nature, which,
in my opinion, would be commonly understood to mean such

cement as is used in construction work, namely, the construction of buildings, roads, sidewalks, and the like, and would not apply to such substance as dental cement, belting cement, and like substances as mentioned in your inquiry. It seems that this theory is supported by the act itself by imposing only a nominal tax upon the one hundred pounds of such cement which, I understand, is the standard unit for sale of cement used for ordinary construction work."

It is our conclusion that the word "cement" in the statute means cement as that term is ordinarily used and understood, and the best definition we can find of this term in regard to how it is ordinarily used and understood is the definition quoted above from Webster's Dictionary; and under that definition the product in question is cement.

Our answer to your question is that it is our opinion that "Trinity-Mix", as that product has been explained to us, is cement, and, therefore, is subject to the cement tax.

                        Yours very truly

                        ATTORNEY GENERAL OF TEXAS


                        By  /s/Cecil C. Rotsch
                                Assistant

CCR:FG:pwb;ml