**UNITED STATES of America**

v.

**TWENTY ACRES OF LAND, MORE OR LESS, WITH IMPROVEMENTS THEREON.**

Civ. A. No. 4198.

United States District Court
E. D. Tennessee, N. D.

Aug. 3, 1962.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for plaintiff.

H. F. Atkins, Knoxville, Tenn., for defendant.

**ROBERT L. TAYLOR, Chief Judge.**

The Government, by its District Attorney, Mr. J. H. Reddy, filed a libel of information on March 2, 1961 alleging that certain property which was owned by Hezikiah Suttles and wife, and located in Union County, Tennessee, violated various Sections of the 1954 Internal Revenue Code, as amended. The property consists of a parcel of real estate containing 20 acres, more or less, on which are located several buildings including a residence, barn, wash house, smoke house, crib and possibly other structures.

Some thirteen provisions of the Code are set forth in the information which have been examined by the Court and counsel during the trial. Many of these provisions do not appear to bear on the question whether the property should or should not be forfeited. This view was expressed by the Assistant District Attorney during the trial and concurred in by the Court.

The most pertinent statute appears to be Sec. 5615, Title 26 U. S. Code, paragraph (1) and paragraph (3), subparagraphs (C), (D), (E) and (F). The pertinent parts of these paragraphs are:

"The following property shall be forfeited to the United States:

"(1) *Unregistered still or distilling apparatus.*—Every still or distilling apparatus not registered as required by section 5179, together with all personal property in the possession or custody or under the control of the person required by section 5179 to register the still or distilling apparatus, and found in the building or in any yard or inclosure connected with the building in which such still or distilling apparatus is set up; * * *.

* * * * * *

"(3) *Distilling without giving bond or with intent to defraud.*— Whenever any person carries on the business of a distiller without having given bond as required by law

* * *; or engages in or carries on the business of a distiller with intent to defraud the United States of the tax on the distilled spirits distilled by him, or any part thereof; * * * carries on the business of a distiller on the premises covered by such notice, or has mash, wort, or beer on such premises, or on any premises connected therewith, or has in his possession or under his control any mash, wort, or beer, with intent to distill the same on such premises—

* * * * * *

"(C) all the right, title, and interest of such person in the lot or tract of land on which the distillery is situated; and

"(D) all the right, title, and interest in the lot or tract of land on which the distillery is located of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or has connived at the same; and

"(E) all personal property owned by or in possession of any person who has permitted or suffered any building, yard, or inclosure, or any part thereof, to be used for purposes of ingress or egress to or from the distillery, which shall be found in any such building, yard, or inclosure; and

"(F) all the right, title, and interest of every person in any premises used for ingress or egress to or from the distillery who knowingly has suffered or permitted such premises to be used for such ingress or egress; * * *."

Although Mr. and Mrs. Suttles did not file any answer to the libel of information, they did file a motion to dismiss the libel upon the ground that the averments in the information are insufficient to warrant forfeiture of their home, and on the further ground that "The government has failed to allege and/or to prove facts sufficient to constitute a libel and/or the seizure and forfeiture of the land alleged in the libel."

The motion was overruled by the Court without prejudice to the movants to renew it at the close of the Government's proof or at the close of all the proof at the trial on the merits. At the conclusion of the Government's proof in the case, the motion was renewed and decision reserved until the Court heard all of the evidence so as to determine all issues at one time.

The Court has heard proof of two of the officers, Messrs. Pardini and Beeler, who participated in the raid of the stills that were found on the property on December 24, 1959. The raid was made pursuant to authority contained in a search warrant.

The proof shows that an unregistered, unbonded distillery was found in operation in the barn that is shown in Exhibit No. 1 on December 24, 1959, and that one of the sons of Mr. and Mrs. Suttles and a man by the name of William Hoyle Smith were engaged in the operation of the still. A still was also found on the same date in what has been referred to in this record as a meat house or, more properly, a wash house which is shown in the picture filed as Exhibit No. 5. The still in the wash house was not in operation.

The wash house is behind the residence of Mr. and Mrs. Suttles as shown in the photograph filed as Exhibit 4. By the side of this wash house is another building. The other building is located nearer the road which leads to the barn that is shown in Exhibit No. 2.

The residence was built about twenty years ago by Mr. and Mrs. Suttles. At the time they built the residence they installed a pump in a pump house which is directly behind the residence and can scarcely be seen in the photograph that is filed as Exhibit No. 4. Officer Beeler undertook to point out this pump and pump house to the Court. He stated that it could barely be seen by him, but the Court was unable to see it at all, but the testimony of Mr. Beeler is accepted, and the Court finds that the pump house is located immediately behind the residence

as shown in the photograph filed as Exhibit No. 4.

There is an electric service pole immediately to the right of one of the buildings shown in photograph filed as Exhibit No. 4. This pole is on the right side of the building as one faces the buildings in the photograph. It is also outside of the fence which partly incloses the residence. The wire fence shown in this photograph appears to fence the yard of the residence but does not go entirely around the rear end of the residence.

The aforementioned wash house and other buildings would protrude some one or two feet into the line of the fence had it been extended so as to close or connect in the rear of the house. There is a wire that runs from the pole into the rear of the residence and is attached to the residence. Also attached is a meter which measures the electricity brought in from the electric line to serve the residence. A wire extends from the house to the pump that is used to pump water into the residence. There are circumstances to indicate that the pump may have been used to pump water into the wash house, but there is no evidence to support a finding that any water pumped into the building by the pump was used to operate the still which was not in operation at the time it was found by the officers but which presumably was set up for future operation; nor is there any proof that any water was pumped from the well at the rear of the residence to the barn where the still was found in operation at the time the officers raided the premises.

There is some evidence that water to operate the still in the barn was obtained from a spring or from other sources than the well. There is no evidence in the record to support a finding that water from the well was pumped to the barn for use in the still.

■ Before property may be forfeited under the aforementioned statutes, or any other statute that pertains to forfeitures for illegal whiskey operations,

the Government must show by the preponderance of the evidence that the property was used, related to, or connected with, illegal distilling operations. United States v. About 151.682 Acres of Land, etc., 99 F.2d 716, 721.

The Government connects the residence with the illegal distilling operations that were found at the barn and the wash house, or at least related it to such operations because of the well and pump located at the rear of the residence. The Government insists that the water so pumped was used in the still that was found in the wash house and possibly in the still that was found in the barn. The Government does not claim with much enthusiasm, if it claims it at all, that there is any evidence to support a finding that water from the well was pumped to the barn for use in the distilling operation, but it does claim that circumstances indicate that water from the well was pumped to the wash house for the distilling operation there.

The circumstances relied upon of the Government to support this contention are that a piece of rubber hose was found inside of the wash house by Mr. Beeler which contained some water and that he ordered the pump disconnected and when that was done the water discontinued to flow through the hose.

Mr. Beeler was examined by the Court rather carefully on that question and he frankly stated that he could not say that the pump was pumping water from the well into the wash house for use in the distilling operation. Since Mr. Beeler could not state that water from the well was being pumped for use in the distilling operation in the wash house and since he could not and did not find evidence that such water from the well was being used for distilling operations after having been pumped into the wash house, then, of course, the Court cannot make a finding that the pump was used to pump water in connection with the operation of the still in the wash house.

There was nothing in the testimony of Mr. Pardini that conflicts with the testimony of Mr. Beeler on that point. The contention of the Government that the residence was connected with this illegal distilling operation runs like this: that the well is in the yard behind the house, that the electric service pole was at the rear of the house to which was attached an electric wire which ran into and fastened on a part of the house, thence through a meter that was attached to the house, and in which meter the owner of the house had an interest since he had made a deposit of $5.00 at the time of installation guaranteeing payment of the bills, and that the wire carried the electricity which furnished the power to operate the pump that pushed the water from the well to the wash house and possibly the barn.

The Government argues that these alleged facts are comparable to the facts set forth in the opinion of the Court in the case of Norbriga v. United States, 1 Cir., 55 F.2d 146. In that case, at page 149, the Court said, in part:

"From the description of the premises, it is evident that the barn in which the still was found, garage and dwelling house were all located on a single lot of land designated as 'Lot numbered eighty-eight (88) on that plat entitled "Samoset Plat."' The gas pipe that supplied gas for the still was connected with the gas pipe in the cellar of the dwelling house. As constructed, the still could not be operated without this house connection. The decree of the District Court properly included the entire lot with the barn, garage, and dwelling house thereon."

It is to be observed from the foregoing statement of the Court that the still in the Norbriga operation could not be operated without a house connection. The facts in that case may be differentiated from the facts in the case at bar because the proof shows to a reasonable certainty that the distilling operation in the barn was not operated by water that was pumped from the well located at the rear of the residence. The officers found

no pipe line leading from the well to the barn. On the other hand, there was an underground pipe line that led from the pump to the wash house. But, as previously indicated, there is no evidence in the record to show that the water, after it reached the wash house, if it did reach the wash house, was used in the operation of the distillery located in the basement, or in the hole, under the wash house.

■ The proof shows and the Court finds that the barn was used to carry on a distilling operation and that the owners did not register the still or give bond for the still as required by Section 5174, 1954 Internal Revenue Code, as amended, and that the barn and the parcel of land on which it is situated is forfeited to the Government in accordance with Section 5615, Title 26, U. S. Code, subject to the property interest of Mrs. Suttles hereinafter stated.

The proof shows that the wash house was likewise used to carry on illegal distilling operations in violation of Section 5174 of the Code which required a still to be registered and bonded, and that it and the parcel of land on which it rests is also forfeited to the United States for such violation, subject to the property interest of Mrs. Suttles hereinafter mentioned.

The proof further shows that the portion of the roadway which is private as distinguished from the portion that is public and which leads to the aforementioned barn and wash house for purposes of ingress and egress, to and from the distilleries, is likewise forfeited to the Government, subject to the interest of Mrs. Suttles.

As previously indicated, the proof shows, and the Court finds, that the Government has failed to show by the preponderance of the evidence that the residence of Mr. and Mrs. Suttles, or the pump house at the rear of the residence, or any other portion of the property described in the libel of information was used in connection with illegal distillery operations or in violation of any of the sections of the Internal Revenue law with respect to untaxpaid whiskey and the petition to forfeit by the Government with respect to such buildings and all other improvements thereon is denied.

What has been previously said applies to the interest of Mr. Hezikiah Suttles in the forfeited property and improvements described above.

■ This leaves one question, whether the interest of Mrs. Suttles in such property should also be forfeited. The property, as previously mentioned, was deeded to Mr. and Mrs. Suttles on March 11, 1941 by Foster Suttles and wife by warranty deed recorded in Deed Book A-3, page 30, in the office of the Register of Deeds of Union County, Tennessee. Hence, Mr. and Mrs. Suttles own this property as tenants by the entirety. Without going into the technicalities of real estate law at this time, it is the Court's understanding that when property is held by man and wife as tenants by the entirety, each owns half of the whole of the property so long as he or she lives but upon the death of one, the survivor shall take the whole.

The pertinent part of sub-section (D) of the statute provides that "the right, title, and interest in the lot or tract of land on which the distillery is located of every person *who knowingly has suffered or permitted the business of a distiller to be there carried on * * *.*" (Emphasis added.)

"Suffered or permitted" appear to be the key words in the statute for the determination of the rights of Mrs. Suttles in the property.

■ As previously indicated, the Court is convinced that Mrs. Suttles did not know that a distillery was located in her barn and therefore did not suffer or permit the distillery business to be carried on in her barn.

The Court, therefore, finds and concludes that her interest in the barn is not forfeited.

There is evidence to the effect that when arrested, her son stated to the officers in substance that his mother and father knew that the still was in the wash house but his mother had told him from time to time to take the still out or away from the wash house. Mrs. Suttles frankly states that she suspicioned that the still was in the wash house. Of course, if the son told the truth to the officers she knew that the still was there, but if she in fact and in truth tried to get her son to take the still out of the wash house, does such attitude embody the kind of "permission or sufferance" that is contemplated by the statute?

Mrs. Suttles' interest in the wash house presents a closer question. As previously stated, there was evidence that when one of her sons was arrested by the officers that he stated in her presence that his mother and father knew about his still in the wash house but that his mother had insisted that he remove the still from the premises. There was testimony that the officers asked her where her husband was when they first went to the house preparatory to raiding the premises and she told them she did not know. As and when they raided the still they observed him coming from the barn toward the house with two five-gallon oil cans which he had presumably used in the still operation located at the barn.

The officers felt that she undertook to mislead them when she told them that she did not know the whereabouts of her husband. Her explanation was she did not know of his whereabouts since she had just returned to her home from town. She frankly admitted that she suspicioned the still being in the wash house.

■■ The Court is of the opinion and finds that the Government failed to carry the burden of proof that she knowingly suffered or permitted the business of a distiller to be carried on in the basement of the wash house. The prayer of the Government to forfeit her interest in the wash house is denied.

Let an order be presented in conformity with the views expressed herein.