UNITED STATES of America, Plaintiff,

v.

CERTAIN REAL PROPERTY, COMMONLY KNOWN AS 6250 LEDGE ROAD, EGG HARBOR, WISCONSIN, Defendant.

No. 89–C–516.

United States District Court,
E.D. Wisconsin.

Sept. 18, 1990.

John E. Fryatt, U.S. Atty. by William J. Lipscomb, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff.

Styler, Kostich, LeBell & Dobroski by Nikola P. Kostich, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

On May 3, 1989, the United States commenced this civil action under 21 U.S.C. § 881(a)(7) seeking the forfeiture *in rem* of a four-acre tract of real property located at 6250 Ledge Road, Egg Harbor, Wisconsin. On the scheduled trial date, June 4, 1990, the parties agreed in open court to waive a trial and to submit the matter to the court for disposition on stipulated facts by filing cross-motions for summary judgment. The government's motion for summary judgment will be granted, and the clerk will be directed to enter judgment of forfeiture of the defendant real property.

The parties' stipulation included the following materials: the January 18, 1990, warrant issued to the Door County Sheriff's Department authorizing the search of the defendant property, along with the application prepared by Sergeant Garey Bies of the Door County Sheriff's Department, and the corresponding return; the report of Allyn Buehler, a sergeant investigator for the Door County Sheriff's Department, prepared following the search; a diagram of the defendant property; an affidavit of James Gordon, dated June 4, 1990; a retainer agreement between James Gordon and his attorney, Nikola Kostich, dated February 6, 1990; and certain portions of the government's motion for summary judgment. The parties also submitted an addendum to the foregoing materials dated June 21, 1990.

It is by an indirect path that the stipulated facts lead to the core controversy in this case. During late 1988 and early 1989, through the use of informants and by personal observation, Sergeant Bies, a nineteen-year veteran of the Door County Sheriff's Department, came to suspect that Anne Miller, a resident of Baileys Harbor, Wisconsin, was involved in illegal drug activity. One of Sergeant Bies' informants, who had recently been arrested for possession of cocaine, had become of some assistance in drug investigation efforts. That informant had provided information that proved to be corroborated and to lead Sergeant Bies to other arrests and to the belief that the informant was reliable.

On January 7, 1989, that informant (who has never been named) indicated that he had within the past six months been involved in cocaine dealings with Ms. Miller—that he had sold cocaine to her and bought it from her. The informant disclosed to Sergeant Bies that Ms. Miller received her cocaine from Florida, via the United States mail.

On January 17, 1989, Sergeant Bies learned from the Baileys Harbor postmaster that a small brown package from Florida had arrived for delivery at Ms. Miller's residence: 8215 South Highway 57, Baileys Harbor, Wisconsin. The package had been received from Florida and was addressed to "A & M Enterprises, c/o Monk, 8215 Hwy 57, Baileys Harbor, WI 54202." Sergeant Bies learned that the package was to have been delivered at Miller's residence on January 18, 1989, in the mid-afternoon. A United States Postal Inspector retrieved the package and, on the morning of January 18, 1989, Sergeant Bies watched as the unopened package, along with five others randomly selected from the mails, faced a "canine sniff" test. A canine, who Sergeant Bies believed was well-trained and "extremely reliable," positively indicated the presence of illegal drugs in the Miller package. Sergeant Bies also learned from the Daytona Beach police department that the return address on the package, 323 S. Beach St., Daytona Beach, Florida, is nonexistent.

Shortly after that package was delivered at Ms. Miller's Baileys Harbor residence, Door County Sheriff's Deputies executed a search of her residence, pursuant to a warrant. The search uncovered various items that confirmed the officers' belief that Ms. Miller was involved in criminal activity—illegal drug trafficking. The officers found the previously mentioned package, which contained a plastic bag with white powder. The officers also found plastic bags with green plant material residue and a plastic bowl containing green plant material residue and rolling papers. Chemical tests revealed that the white powder tested posi-

tive for the presence of cocaine and the green plant material tested positive for the presence of the chemically active ingredient of marijuana (THC).

The search also substantiated Sergeant Bies' belief that a relationship existed between Anne Miller and James Gordon and that they were living together. During the search of Ms. Miller's residence, one drawer of men's clothing was found in the bedroom. Sergeant Bies also observed that Mr. Gordon's vehicle was "commonly parked" at Ms. Miller's residence and had seen the two of them together on "hundreds of occasions." In fact, just as the law enforcement officers were preparing to execute the search warrant at Ms. Miller's residence, Ms. Miller and Mr. Gordon arrived in one of Ms. Miller's vehicles.

Sergeant Bies had also been observing Mr. Gordon and Mr. Gordon's residence during the preceding months. Another informant, who had on at least ten occasions provided Officer Bies with detailed and "reliable information" about Door County drug activities, corroborated by Officer Bies' personal observations and by other informants, "indicated that on several occasions in approximately late Summer of 1988" he was at Mr. Gordon's residence and had been given cocaine and marijuana by Mr. Gordon. The effect of that information, along with the evidence uncovered at Ms. Miller's residence and his personal observations, was to develop in Sergeant Bies the belief that a search of Mr. Gordon's residence would uncover evidence of illegal drug trafficking.

Disclosing this information in an affidavit, Sergeant Bies prepared an application for a search warrant for Mr. Gordon's residence, a one-story ranch-style home located on the defendant property, at 6250 Ledge Road, Egg Harbor, Wisconsin. On January 19, 1989, the application was submitted to a judicial officer, Door County Circuit Judge John D. Koehn, who ordered that the warrant issue. The subject of the search was the residence, along with all surrounding curtilage, appurtenances and outbuildings. The items sought included heroin, cocaine, marijuana, hashish, and parapher-

nalia related to the sale and use of cocaine and marijuana—evidence of the commission of a violation of Wisconsin criminal law.

On January 19, 1989, pursuant to the search warrant, Door County law enforcement officers conducted a search of a residence and outbuildings located on the defendant property. During the search, the officers (with the assistance of a trained canine) discovered two secret rooms located behind hidden walls in the residence. In those rooms was conducted a highly sophisticated marijuana growing operation consisting of 460 plants, plant food and fertilizer (manure), flourescent grow lamps, a temperature control and humidifying system, a carbon dioxide monitoring system, a food dehydrator, and drying marijuana plant material. Random tests of the plants confirmed the presence of the chemically active ingredient in marijuana, THC. On a bulletin board in the residence the officers found a business card beneath a photograph of Mr. Gordon, ostensibly identifying Mr. Gordon as "The Big Monk."

As a result of this discovery, the owner of the defendant property, Mr. Gordon, became a defendant himself—in two state court criminal prosecutions: State of Wisconsin v. Gordon, Case Nos. 89–CF–018 and 89–CF–019 (filed March 2, 1989). In state court, Mr. Gordon has been charged with two felony counts: *knowing manufacture of marijuana in excess of 2,500 grams in violation of secs. 161.14(4)(t) and 161.41(1)(h)(3), Stats.; and knowing maintenance of a dwelling used for the manufacture of a controlled substance in violation of secs. 161.14(4)(t) and 161.42(2), Stats.* In this court, the United States filed this civil action alleging that by virtue of 21 U.S.C. § 881(a)(7) the defendant property was subject to forfeiture to the government. Attorney Kostich was retained as defense counsel by Mr. Gordon in both this civil action and in the state criminal proceedings.

In response to the government's allegations that the defendant property was subject to forfeiture under 21 U.S.C. § 881(a)(7), Mr. Gordon filed a verified claim and answer as required by Rule C(6),

Supplemental Rules for Certain Admiralty and Maritime Claims. Mr. Kostich also asserted an interest in the property at issue. He filed a verified claim pursuant to Rule C(6), but then failed to file an answer as required by that rule. It appeared that Mr. Kostich had withdrawn his claim; Mr. Kostich was present but remained silent when the government's attorney notified the court of the withdrawal during a hearing. Nevertheless, subsequent correspondence from Mr. Kostich and from the government suggests that this issue remains unresolved. For that reason, the court will resolve it by dismissing Mr. Kostich's claim for failure to comply with Rule C(6). Mr. Gordon, the owner of the defendant property, alone, is the claimant in this action.

The comprehensive drug forfeiture statute under which this civil action has been brought, 21 U.S.C. § 881(a), provides in pertinent part:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them: ...

> (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, a violation of this title [Title 21] punishable by more than one year's imprisonment....

Before determining whether the requirements for civil forfeiture under § 881(a)(7) have been fulfilled, the court will address two preliminary matters raised by the claimant, Mr. Gordon.

■ Mr. Gordon first contends that the forfeiture will work a violation of his sixth amendment right to counsel. This contention must relate to his state court criminal prosecutions since he asserts no right to counsel in this civil forfeiture proceeding and *is* represented by counsel. Mr. Gordon complains that the property subject to forfeiture to the government is the only asset he has to pay the defense counsel of his choice, Mr. Kostich. In fact, Mr. Kostich has asserted that he now has an interest in the defendant property by virtue of an assignment by Mr. Gordon of his rights in the defendant property to Mr. Kostich in their retainer agreement for the defense of this action and the parallel criminal proceedings.

Last term, in the companion cases of *Caplin & Drysdale v. United States,* —— U.S. ——, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), and *United States v. Monsanto,* —— U.S. ——, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), the Supreme Court, evaluating another forfeiture statute in the government's arsenal in the so-called war on drugs, 21 U.S.C. § 853, explicitly rejected the argument that Mr. Gordon and Mr. Kostich now pose. The Court concluded that "[t]he Government may—without offending the Fifth or Sixth Amendments—obtain forfeiture of property that a defendant might have wished to use to pay his attorney." *Monsanto,* 109 S.Ct. at 2667. The Court explained why forfeiture statutes are not unconstitutional in this respect:

> [T]he burden the forfeiture law imposes on a criminal defendant is limited. The forfeiture statute does not prevent a defendant who has nonforfeitable assets from retaining any attorney of his choosing. Nor is it necessarily the case that a defendant who possesses nothing but assets the Government seeks to have forfeited will be prevented from retaining counsel of choice. Defendants ... may be able to find lawyers willing to represent them, hoping that their fees will be paid in the event of acquittal, or via some other [nonforfeitable] means that a defendant might come by in the future.

*Caplin & Drysdale,* 109 S.Ct. at 2652.

As the Court pointed out, a criminal defendant lacking the means to hire his own attorney has "no cognizable complaint" if he is "adequately represented" by an attorney appointed by the court. *Caplin & Drysdale,* 109 S.Ct. at 2652. In other words, "a defendant may not insist on representation by an attorney he cannot afford." *Caplin & Drysdale,* 109 S.Ct. at 2652, *quoting Wheat v. United States,* 486

U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988).

The claimant's plea that the property at issue is his only asset available to pay the costs of his criminal defense is without merit. Mr. Gordon cites neither *Caplin & Drysdale* nor *Monsanto;* he has not attempted to explain why that criminal forfeiture statute is distinguishable from the civil forfeiture statute applicable here. In the view of this court, the differences between 21 U.S.C. § 853 and 21 U.S.C. § 881 are insufficient to justify a different result on Mr. Gordon's sixth amendment challenge. Because Mr. Gordon makes no showing that he will be left without adequate representation—by appointed counsel if need be—in the event a judgment of forfeiture is entered against the defendant property, the court rejects Mr. Gordon's contention that the forfeiture of his property would work the denial of his sixth amendment right to counsel. Moreover, since the defendant property is subject to forfeiture, it is off limits to Mr. Gordon's attorney, Mr. Kostich, regardless of the terms of their retainer agreement (which also provides for the representation of Anne Miller); in other words, the retainer agreement cannot defeat the government's right to the forfeited property, should it be established.

■ Mr. Gordon also contends that the scheduling of the proceedings in this case, in particular, the court's "arbitrary" calendaring of the case for trial, violated his fifth amendment privilege against self-incrimination. It is true that the privilege may be "operative" in civil forfeiture actions. *See, e.g., Ryan v. C.I.R.,* 568 F.2d 531, 542 (7th Cir.1977) (forfeiture based upon tax fraud), *cert. denied, Estate of Ryan v. C.I.R.,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). However, the case at bar simply progressed on the docket as it matured—and it progressed no faster than any other civil action on the court's trial calendar. The trial was set to take place well over a year after the action was commenced. Moreover, the scheduling of a trial date for a case that is ready for trial, as this one has been for some time, is within the proper exercise of this court's

"substantial inherent power to control and manage its docket." *Arthur Pierson & Co. v. Provimi Veal Corp.,* 887 F.2d 837, 839 (7th Cir.1989). When scheduling this case for trial, the court attempted to balance the needs of judicial efficiency and the rights of the litigants, as *Provimi Veal* instructs.

The difficulty is that Mr. Gordon never actually substantiated the assertion of his fifth amendment privilege until *after* he had agreed to settle the case on stipulated facts—on the trial date. While the problems facing Mr. Gordon because of the criminal prosecutions were brought to the court's attention early on, Mr. Gordon never favored the court with a formal motion for a stay on the basis of this privilege. The court is satisfied that the constitutional harm, if any has been done, was brought about by Mr. Gordon's failure to assert the privilege before he agreed to stipulate to the facts. This constituted a waiver. In other words, having embarked upon such a course of conduct, Mr. Gordon cannot, solely by the existence of a parallel criminal proceeding, now turn the fifth amendment shield into a sword to smite further proceedings in this case. *United States v. Little Al,* 712 F.2d 133, 135–36 (5th Cir. 1983); *United States v. United States Currency,* 626 F.2d 11, 16 (6th Cir.), *cert. denied, Gregory v. United States,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980).

Summary judgment is appropriate where the pleadings and filings "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. Because the parties have agreed to stipulated facts, there is no factual dispute, and summary judgment is eminently appropriate. The court is prepared to enter judgment as a matter of law under the provisions of 21 U.S.C. § 881(a)(7).

Civil forfeiture actions under 21 U.S.C. § 881 involve a shifting standard of proof between the government and the claimant (on behalf of the defendant property). The government is entitled to a judgment of forfeiture upon a showing of probable

cause that the property is subject to forfeiture within the statutory language—that the property has been used or was intended to be used to facilitate a violation of Title 21 punishable by one year or more. 21 U.S.C. § 881(a)(7); *United States v. Edwards*, 885 F.2d 377, 389–90 (7th Cir.1989) (citations omitted) (analysis under 21 U.S.C. § 881(a)(6)). The term "probable cause" is defined in a civil forfeiture actions as it is elsewhere (for example, in assessing the validity of a search warrant): "there must be a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *Edwards*, 885 F.2d at 389–90; *United States v. One 1981 Cadillac Eldorado*, 535 F.Supp. 65, 66 (N.D.Ill.1982) (probable cause for civil forfeiture not shown where facts raised mere suspicion). If the government demonstrates probable cause that the property is subject to forfeiture, the claimant then bears the burden of proving by a preponderance of the evidence that the subject property was not used or intended to be used to facilitate the requisite violation of Title 21. *Edwards*, 885 F.2d at 389–90; *One 1981 Cadillac Eldorado*, 535 F.Supp. at 66.

■ The government has not done a very impressive job of establishing the statutory requirements for forfeiture of the defendant property. At its core, the government's complaint simply paraphrases, in conclusory terms, the statutory language:

> There is probable cause to believe that the defendant property was used, or intended to be used, to commit, or to facilitate the commission of, a violation of Chapter 13, Subchapter I, of Title 21, United States Code punishable by more than one year.

It may be that these forfeiture actions are ordinarily accompanied by a federal criminal prosecution under a specific section of Title 21, but nowhere in this record is there any indication that Mr. Gordon, a state court criminal defendant, has been charged with a violation of *any* federal criminal statute. Section 881(a)(7) does not authorize a forfeiture where the property is shown to have been used only to facilitate the commission of a *state law* drug felony.

One prominent failing permeates all of the government's pleadings and filings in this case: the failure to point out that the underlying violation of Title 21 is of 21 U.S.C. § 841(a)(1), a generalized prohibition of "drug trafficking"—the knowing or intentional manufacture of a controlled substance, here 460 marijuana plants. Only *beyond* the stipulated facts, in an affidavit of William Hehr, Special Agent of the Drug Enforcement Administration, does the court find a suggestion that the defendant property was used in violation of 21 U.S.C. § 841(a)(1). Nowhere does the government indicate how the stipulated facts satisfy the elements of a violation of § 841(a)(1) to the degree contemplated by the language of § 881(a)(7). Also left unmentioned by the government is the fact that a violation of § 841(a)(1) involving "100 or more marijuana plants regardless of weight" is punishable by a term of imprisonment of not less than five years. 21 U.S.C. § 841(b)(1)(B)(vii). These deficiencies move the government's case precariously close to dismissal.

Indeed, under different circumstances, the court would be obliged to treat the government's failure to identify a specific Title 21 violation as a fatal failure of its case. Ordinarily, the government's failure in this regard would raise due process concerns as it would certainly prejudice a claimant's ability to defend in the action. Forfeitures are not favored in the law, and the forfeiture statute is to be strictly construed to mitigate any affront to due process concerns deriving from its "harshness." *See United States v. One 1976 Mercedes Benz 280S*, 618 F.2d 453, 454 (7th Cir.1980). Accordingly, strict construction of the phrase "in violation of a section of this Title" appearing in § 881(a)(7) would require that a specific alleged violation of Title 21 be described—not merely that the statutory language be repeated in a conclusory fashion.

■ To dismiss the government's action here, however, given both the unique pro-

cedural posture of this case and the defendant's failure to object, would be inappropriate. The government has, in the materials submitted in support of its motion for summary judgment, repeatedly made reference to felony drug trafficking, hence Mr. Gordon is not without notice of the nature of the violation of Title 21 underlying this forfeiture action. More importantly, Mr. Gordon has raised no such due process objection. The court deems Mr. Gordon's failure to object to be a waiver of any due process objections in this regard.

However, Mr. Gordon has raised an objection to the admissibility of the substantive evidence proffered by the government to establish probable cause for the forfeiture. He claims that the evidence is constitutionally infirm—the "fruit of the poisonous tree"—having been acquired by a violation of the fourth amendment. That evidence—460 marijuana plants in an obviously sophisticated growing operation—was disclosed when Door County law enforcement officers searched a residence and outbuildings on Mr. Gordon's property pursuant to a search warrant issued by a state judicial officer. Nevertheless, the exclusionary rule would apply in this "quasi-criminal" civil forfeiture action to bar the admissibility of this relevant evidence, if it has been unlawfully obtained. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965); *United States v. Seventy–Three Thousand, Two Hundred Seventy–Seven Dollars, United States Currency,* 710 F.2d 283, 287 n. 6 (7th Cir.1983). Therefore, the court must assess the legality of the search under the fourth amendment—the admissibility question—before determining whether the evidentiary force of its fruits is sufficient to justify the forfeiture of the defendant property.

Mr. Gordon levels his fourth amendment challenge specifically at the warrant that the state law enforcement officers obtained to search his home. His attack is two-pronged. He contends that the warrant was not supported by probable cause and that the judicial officer who issued the warrant was not "neutral and detached." The court will not dwell long on Mr. Gordon's

attack of the neutrality of the judicial officer who issued the warrant because there is no basis for such a contention in the stipulated facts. Mr. Gordon's contention that the warrant was not supported by probable cause fails on the merits.

■ As a threshold issue, although the search was conducted by state officers, Mr. Gordon's assertions that the warrant is violative of Wisconsin law are misdirected.

> The question of whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged *as if the search and seizure had been made by federal officers.*

*Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964) (emphasis added); *Elkins v. United States,* 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960). This rule has recently been reconfirmed by the seventh circuit court of appeals, *United States v. Mealy,* 851 F.2d 890, 907 (7th Cir.1988). It follows that the court in this federal case must measure the adequacy of the probable cause determination under federal standards even if they are less restrictive of police power than parallel standards existing under Wisconsin law. *Cf.* Abrahamson, Criminal Law and State Constitutional Law: The Emergence of State Constitutional Law, 63 Tex.L.Rev. 1141, 1173–76 (1985).

Mr. Gordon also offers a fourth amendment justification for delay in this court. He urges that this court stay its determination of the legality of the search pending the ruling of a state court facing that question by virtue of a motion to suppress evidence in the parallel criminal prosecution. (The state court ruling has been pending since March 1990, which leads this court to wonder whether Mr. Gordon has contributed to the delay presenting the converse of that argument in state court.) The Supreme Court long ago addressed this contention. Under the fourth amendment

[A] federal court must make an independent inquiry, whether or not there has been such inquiry by a state court, and irrespective of how such inquiry may have turned out[, and that inquiry is] neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.

*Elkins,* 364 U.S. at 223–24, 80 S.Ct. at 1447. That the state court considering Mr. Gordon's motion to suppress evidence in the criminal prosecution, which at present had not yet issued a decision, might reach a different conclusion on the legality of the search is no justification for further delay in this court.

It is axiomatic that the fourth amendment serves to protect the citizen from arbitrary and unreasonable exercises of police power. However, the fourth amendment does not prohibit searches and seizures—it "regulates" them. That is, to pass constitutional muster, a search must be reasonable. Since the search of which Mr. Gordon complains was effected pursuant to a warrant, Mr. Gordon bears burden of proving its unreasonableness, hence its illegality under the fourth amendment. *United States v. Longmire,* 761 F.2d 411, 417 (7th Cir.1985). The court remains mindful that "the fourth amendment cannot become an additional casualty in society's efforts to combat and defeat the drug crisis." *United States v. Ingrao,* 897 F.2d 860, 866 (7th Cir.1990) (Flaum, J.).

While a search warrant must be supported by probable cause, probable cause, in turn, is measured by a flexible totality of the circumstances standard. *United States v. McNeese,* 901 F.2d 585, 592 (7th Cir.1990); *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The concept of probable cause is fluid, flexible, practical, and non-technical. *McNeese,* 901 F.2d at 592; *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) (probable cause as the very name implies deals with probabilities). Probable cause to issue a search warrant requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity."

*Gates,* 462 U.S. at 244 n. 13, 103 S.Ct. at 2335 n. 13. Put another way, probable cause contemplates something more than mere suspicion but less than certainty. *United States v. Ellery,* 678 F.2d 674, 678 (7th Cir.), *cert. denied,* 459 U.S. 868, 103 S.Ct. 150, 74 L.Ed.2d 126 (1982).

■ Where, as here, the challenge is directed toward the validity of a warrant to search a residence, the "critical element" in determining whether this search was reasonable "is not that the owner of the property is suspected of crime but that there is a reasonable cause to believe that the specific 'things' to be searched for are located on the property to which entry is sought." *United States v. Malin,* 908 F.2d 163, 165 (7th Cir.1990), *quoting Zurcher v. Stanford Daily,* 436 U.S. 547, 556, 98 S.Ct. 1970, 1976, 56 L.Ed.2d 525 (1978). Thus, for this search to be reasonable, the materials in the application for the search warrant for Mr. Gordon's residence must have supported an inference that evidence of Mr. Gordon's drug trafficking would probably be found there. *Malin,* 908 F.2d at 165.

Within the totality of the circumstances standard, those materials may incorporate the deductions and observations of the trained and experienced law enforcement officers involved, as well as the inferences they have drawn therefrom. *United States v. Griffin,* 827 F.2d 1108, 1111 (7th Cir.1987), *cert. denied,* 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 243 (1980). Mr. Gordon does not question the level of experience of the investigating officers; the officers' undisputed vast experience in the investigation of drug offenses is a permissible part of the probable cause calculus. *Griffin,* 827 F.2d at 1113; *cf. United States v. Sweeney,* 688 F.2d 1131, 1135–36 (7th Cir.1982) (officer's drug investigation experience supported probable cause determination).

Nevertheless, Mr. Gordon specifically protests that the issuance of the search warrant in this case was improper because it amounted to a conclusion of "probable cause by association." The seventh circuit court of appeals in a recent decision has

noted that "[i]n order to find probable cause based on association with persons engaging in criminal activity, some additional circumstances from which it is reasonable to infer participation in criminal enterprise must be shown." *Ingrao*, 897 F.2d at 864 (citation omitted). Moreover, in *Ingrao*, the court cautioned that "physical proximity to a suspected crime, without other indicia of ... involvement, is insufficient to support a finding of probable cause." 897 F.2d at 863 (citation omitted).

Mr. Gordon also protests that the some of the materials in the application for the search warrant were "stale," *see Sgro v. United States*, 287 U.S. 206, 210–12, 53 S.Ct. 138, 140–41, 77 L.Ed. 260 (1932) (information that is "too old" is considered stale and no longer supports a finding of probable cause). While the age of the information supporting the application for a warrant "is a factor" in the probable cause determination, a warrant may issue "if other factors indicate that the information is reliable and that the object of the search will still be on the premises." *McNeese*, 901 F.2d at 596–97 (seven month-old information not stale); *United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir.1987) (nine month-old information not stale). In *NcNeese*, the seventh circuit court of appeals also recognized the importance of considering the nature of the criminal activity along with the passage of time: when the activity is "of a protracted and continuous nature, the passage of time between the last described act and the application for the warrant diminishes in significance." 901 F.2d at 597 (citations omitted).

Mr. Gordon's narrow and specific contentions misperceive the flexible, practical nature of the totality of the circumstances standard. Under the totality of the circumstances standard, as applied in such cases as *Ingrao* and *McNeese*, the question is simply whether the facts in the materials in the application for the search warrant "add up" to probable cause—something more than mere suspicion. In this case, despite Mr. Gordon's "guilt by association" and "staleness" arguments, they do.

There are "additional circumstances" beyond Mr. Gordon's mere association with Ms. Miller which demonstrate his probable participation in criminality. The other "indicia of involvement" lacking in *Ingrao* were certainly not lacking in the materials contained in the application for the search warrant obtained to search Mr. Gordon's residence. Sergeant Bies' personal observations of Mr. Gordon's close association with Ms. Miller, who had been shown to be involved in illegal drug trafficking, coupled with information of Mr. Gordon's own drug dealings, provided by reliable informants, substantiated the probable cause determination.

When characterizing the informants' statements as "stale," Mr. Gordon ignores the fact that a drug investigation is often of a "protracted and continuous nature," and that a delay by investigating officers in obtaining a warrant is permissible, as noted in *McNeese*, so long as the informant's information remains reliable. In other words, the investigating officers were not required to act in great haste during their efforts to uncover drug dealers in Door County. As long as other factors established the continuing reliability of the informant's information, the delay did not bear adversely upon the finding of probable cause. In this case, other factors such as the recent arrival of a package for delivery at Ms. Miller's residence that was found to include cocaine and Officer Bies's personal observations of the nature of the Miller–Gordon relationship tended to establish that the informant's information of Mr. Gordon's drug dealings retained its vitality—and its reliability.

Viewed as a whole, the materials provided to the judicial officer certainly provided a substantial basis for agreement with the law enforcement officers' determination that there was a probability or substantial chance that a search of Mr. Gordon's residence would turn up evidence of drug trafficking. That is, under the totality of the circumstances, probable cause to issue a search warrant existed. Therefore, the search conducted pursuant to that warrant was lawful, and the fruits of that search

are properly given evidentiary weight in this civil forfeiture action.

█ Since that evidence is admissible, the court finds that there exists probable cause for forfeiture of the property; there is probable cause to believe that the property was intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1) of the requisite severity. The presence of 460 marijuana plants along with sophisticated "home gardening" equipment and growing "tools" within Mr. Gordon's residence certainly provides a reasonable ground for the belief that the marijuana manufacture was intentional. It is probable, if not certain, that those plants would be "trafficked"— entered into the stream of commerce. Armed with that evidence as to the use of the premises, the government has manifestly shown that there is probable cause to believe that the defendant property is subject to forfeiture—that it was "intended to be used, in any manner or part, ... to facilitate the commission of" a violation of 21 U.S.C. § 841(a)(1). The burden has, then, shifted to Mr. Gordon to show by a preponderance of the evidence that the property that the property is not subject to forfeiture.

Mr. Gordon provides little by way of a defense of the property on the merits. Mr. Gordon can only quibble that rabbits raised in outbuildings on the property were used not as fertilizer manufacturers for the marijuana, but exclusively as a commercial enterprise involving their sale to restaurants. No evidence supports this. That argument is as flimsy on this record as one that the marijuana plants were grown solely to feed the rabbits. Suffice it to say that Mr. Gordon has not carried his burden; forfeiture of the defendant property to the government is warranted.

But even that determination does not end this case. Ultimately, Mr. Gordon contends that even if forfeiture is appropriate, the scope of the forfeiture is excessive—beyond the scope of proportionality. The government seeks the civil forfeiture of "the whole" of the premises: a four-acre tract upon which stands a residence incontestably used in more than an incidental manner to facilitate the commission of a violation of 21 U.S.C. § 841(a)(1). Mr. Gordon urges that only the offending residence—and not the abutting curtilage—is subject to forfeiture.

The division of the tract for purposes of forfeiture is not contemplated by the statute. The statute explicitly calls for forfeiture of "[a]ll real property, including any right, title, and interest in *the whole* of any lot or tract ..., which is used, or intended to be used, *in any manner or part*" to facilitate the commission of a violation of Title 21. 21 U.S.C. § 881(a)(7) (emphasis added) (parenthetical omitted). Nothing more is required than that the nexus between the defendant property and the facilitated violation be "more than incidental or fortuitous." *United States v. One Parcel of Real Estate*, 903 F.2d 490, 494 (7th Cir. 1990). Forfeiture of the property as a whole follows once that nexus is established.

In this case, the defendant property, "in any manner or part" by virtue of the residence, was used to facilitate drug trafficking. There is no question that the sophisticated marijuana growing operation present on the defendant property did not blossom there incidentally or by fortuity. That being so, § 881(a)(7) unequivocally commands the forfeiture of "the whole" of the four-acre tract, including both the residence and abutting curtilage. That other aspects of the defendant property than the residence may not have been "substantially connected" with Mr. Gordon's drug trafficking is of no relevance. In *One Parcel of Real Estate*, the seventh circuit court of appeals expressly rejected any such "substantial connection" gloss on the unambiguous and unequivocal language of 21 U.S.C. § 881. 903 F.2d at 494.

Therefore, IT IS ORDERED that the government's motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that the defendant property's motion for summary judgment be and hereby is denied.

IT IS FURTHER ORDERED that Mr. Kostich's verified claim be and hereby is dismissed with prejudice.

IT IS FURTHER ORDERED that the defendant real property in its entirety, including the whole of the four-acre tract of land and any appurtenances or improvements, be and hereby is forfeited to the government in accordance with the provisions of 21 U.S.C. § 881(a)(7).

IT IS FURTHER ORDERED that the clerk be and hereby is directed to enter the judgment of forfeiture of the defendant real property in favor of the government.