**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**CERTAIN REAL PROPERTY, COMMONLY KNOWN AS 6250 LEDGE ROAD, EGG HARBOR, WI, Defendant–Appellant,**

**and**

**James Gordon, Claimant–Appellant.**

**No. 90–3590.**

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1991.

Decided Sept. 11, 1991.

William J. Lipscomb (argued), Office of the U.S. Atty., Asset Forfeiture Unit, Milwaukee, Wis., for plaintiff-appellee.

Robert G. LeBell, Nikola Kostich (argued), Styler, Kostich, LeBell & Dobroski, Milwaukee, Wis., for defendant-appellant and claimant-appellant.

Before CUMMINGS and POSNER, Circuit Judges, and NOLAND, Senior District Judge.*

NOLAND, Senior District Judge.

This is an appeal from the district court's order of forfeiture, which was entered on the parties' cross-motions for summary judgment. On September 18, 1990, the district court granted the government's Motion for Summary Judgment and entered an order pursuant to 21 U.S.C. § 881(a)(7) directing forfeiture of the defendant property. *United States v. Certain Real Property, Commonly Known as 6250 Ledge Road, Egg Harbor, Wisconsin*, 747 F.Supp. 505, 507 (E.D.Wisc.1990). On appeal, Gordon argues that the forfeiture order must be reversed because (1) the warrant authorizing the search of his residence was not supported by probable cause, (2) the forfeiture order itself was not supported by sufficient evidence, (3) forfeiture of the defendant property was improper under the circumstances and disproportionate under the Eighth Amendment, and (4) the district court erred in denying Gordon's motion to stay the forfeiture proceedings pending the resolution of the criminal charges against him. We affirm.

## I. BACKGROUND

Based upon his own observations as well as information supplied by an unnamed reliable informant, Door County (Wisconsin) Sheriff's Department Sergeant Bies came to believe in late 1988 and early 1989 that Anne Miller, a Baileys Harbor, Wisconsin resident, was involved in illegal drug activity. On January 7, 1989, the informant told Sergeant Bies that he had sold cocaine to Miller, and purchased the same from her, within the past six (6) months. He also told Bies that he knew Miller received her cocaine from Florida through the United States mail.

Ten (10) days later, on January 17, 1989, Bies was informed by the Baileys Harbor postmaster that a package from Florida (which Bies later learned was from a nonexistent address) had arrived for delivery at Miller's residence. On the following day, the package, which was retrieved by a postal inspector, flunked a "canine sniff test" by a well-trained and reliable canine. The package, which was addressed "A & M Enterprises, c/o Monk, 8215 Hwy 57, Baileys Harbor, WI 54202," was then delivered to Miller's residence. Shortly thereafter, Miller's residence was searched pursuant to a warrant. Those executing the warrant discovered cocaine, marijuana, and various items which confirmed that Miller was engaged in illegal drug activity. The search also confirmed Bies' belief, which was based in part upon his personal observations, that Gordon and Miller had a relationship. Bies had observed Gordon and Miller together on "hundreds of occasions." He also had observed that Gordon's car was "commonly parked" at Miller's residence. Bies noted that as the officers were about to execute the warrant, Gordon and Miller drove up to her residence together. During the search of Miller's residence the

---

* The Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is sitting by designation.

officers discovered men's clothing in one of her bedroom drawers.

Significantly, Bies had been informed by another reliable informant that on several occasions in late summer of 1988, claimant-appellant James Gordon had given‚ the informant cocaine and marijuana. Believing, based upon these facts, that evidence of illegal drug trafficking would be present in Gordon's residence, Bies prepared an affidavit and application for a search warrant. He submitted the same to Door County Circuit Judge John D. Koehn who proceeded to issue the requested warrant.

On January 19, 1989, Gordon's residence and outbuildings were searched. The officers who conducted the search, assisted by a trained canine, discovered two (2) secret rooms behind hidden walls in Gordon's residence. The rooms contained 460 marijuana plants, plant food and manure (which was used as fertilizer), florescent grow lamps, a temperature control and humidifying system, a carbon dioxide monitoring system, a food dehydrator, and drying marijuana plant material. On a bulletin board under a photograph of Gordon, the officers discovered a business card which identified Gordon as "The Big Monk." Shortly thereafter, Gordon was charged with felonies in two (2) state criminal actions. One or both of the actions were filed on March 2, 1989.

On May 3, 1989, the government filed a Complaint for Civil Forfeiture *in rem*. In due course, Gordon answered the Complaint. His counsel asserted an interest in the property. The district court dismissed

Gordon's counsel's claim after noting that subsequent correspondence from him "suggest[ed] that th[e] issue remain[ed] unresolved." *Id.*, 747 F.Supp. at 509.

The parties, having filed cross-motions for summary judgment, agreed to submit this cause to the district court on stipulated facts. On September 18, 1990, in a twenty-eight (28) page Decision and Order, the district court granted the government's Motion for Summary Judgment, denied Gordon's Motion, and entered an order directing the forfeiture of Gordon's property.[1]

## II. ANALYSIS

### A. *Probable Cause to Search Residence*

■ The primary argument advanced by Gordon is that the district court erred in determining that the search warrant which authorized the search of his residence was not supported by probable cause. In essence, Gordon argues that the evidence was confined to establishing his "guilt by association" with Miller and that it was stale because it pertained to a period so far in advance of the officers' request for, and execution of, the search warrant. Appellant's Brief, pp. 6–27.[2]

While the standard of review applicable to appellate review of probable cause supporting the issuance of a search warrant "is not entirely settled" in this Circuit, *see United States v. Romo*, 914 F.2d 889, 897–898 (7th Cir.1990) (citing cases), *cert.*

---

1. The district court began its opinion by resolving a preliminary matter which had been raised by Gordon. Citing two (2) recent United States Supreme Court cases, both of which involved an analogous forfeiture statute, the district court rejected Gordon's contention that the forfeiture of his property violated his Sixth Amendment right to counsel because it deprived him of the only asset he had to pay the counsel of his choice. *United States v. Certain Real Property, Commonly Known as 6250 Ledge Road, Egg Harbor, Wisconsin*, 747 F.Supp. at 509–510 (*Citing Caplin & Drysdale v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), and *United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989)). The district court's conclusion on this issue was correct. *See Securities and Exchange Commission v. Cherif*, 933 F.2d 403, 416–417 (7th Cir.1991).

2. Gordon also argues that the search warrant affidavit was not reviewed by a neutral and detached magistrate because the judge who reviewed the warrant had a lengthy and substantial relationship with Gordon and his family. Appellant's Brief, pp. 26–27. We have carefully examined the record, however, and agree with the district court that "there is no basis for such a contention in the stipulated facts." *United States v. Certain Real Property*, 747 F.Supp. at 512. The district court was only free to consider as proven those facts which were contained in the documents which were referenced in the parties' Stipulation of Facts. *See* Stipulation of Facts, pp. 1–2, ¶ 2(a–f).

*den.,* —— U.S. ——, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991), and *United States v. McKinney,* 919 F.2d 405, 418–423 (7th Cir. 1990) (Posner, J., concurring), the district court's probable cause determination in the present case should be affirmed, as in *Romo,* even under the less deferential *de novo* standard.

In *United States v. Ingrao,* 897 F.2d 860, 864 (7th Cir.1990), which was cited in the district court's Opinion, this Court stated that "[i]n order to find probable cause based upon association with persons engaging in criminal activity, some additional circumstances from which it is reasonable to infer participation in criminal enterprise must be shown." *Id.* (*Quoting United States v. Hillison,* 733 F.2d 692, 697 (9th Cir.1984), and *citing United States v. Ceballos,* 654 F.2d 177, 185 (2d Cir.1981)). We agree with Judge Gordon that in the present case the government demonstrated that such additional circumstances were present. The circumstances identified by the court, which it found constituted "indicia of [Gordon's] involvement" in the same criminal enterprise which Miller was involved in, included Sergeant Bies' personal observations of Gordon's association with Miller (who was herself involved in drug trafficking), the recent arrival at Miller's residence of a package containing cocaine, and the information regarding Gordon's drug dealings which was supplied by reliable informants.

Gordon's suggestion during oral argument that the evidence indicates only that he "gave" (rather than sold) drugs to the informant is based upon a hypertechnical reading of Sergeant Bies' affidavit. Read in context, it is clear that the informant was stating that Gordon was involved in drug trafficking. The paragraph which contains the informant's statements to Sergeant Bies regarding Gordon's drug activities begins with a recitation of the fact that the informant had been providing Door County authorities with information regarding drug suppliers and others who facilitated drug trafficking. When read in context, it is clear that the statement that Gordon "gave" the informant drugs did not mean that he gave them to him as a gift.

In response to Gordon's staleness argument, the district court noted that drug investigations are often of a "protracted and continuous nature" and that resultant delay (between the investigation and the issuance of a search warrant) is permissible as long as the informant's information remains reliable (as it found occurred in the present case). The court correctly cited *United States v. McNeese,* 901 F.2d 585, 596–597 (7th Cir.1990), and *United States v. Batchelder,* 824 F.2d 563, 564 (7th Cir. 1987), for the proposition that while the age of information supporting a probable cause determination is a factor to be considered, it is not determinative. *United States v. Lamon,* 930 F.2d 1183, 1187–1188 (7th Cir.1991).

Given the facts as set out in the Sergeant Bies' Affidavit, the state court judge was justified in concluding that a search of Gordon's residence would uncover evidence of his drug activities. "In the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Lamon,* 930 F.2d at 1188 (*Quoting, United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986)).

### B. *Sufficiency of the Evidence to Support Forfeiture Determination*

Gordon also argues that the district court's forfeiture order was not supported by sufficient evidence. However, his argument emphasizes what the evidence did not show rather than what it did. He argues, for example, that the officers' warrant return did *not* indicate that the officers discovered records of profits from the sale of marijuana, and that the officers did *not* describe the condition of the marijuana (i.e., whether it was withered, etc.). According to Gordon's counsel, the failure to describe the marijuana means that the judicial officer could not conclude it (all 460 plants!) was not for personal use.

This Court's standard of review in determining whether a district court's forfeiture order was supported by sufficient evidence is well settled:

Civil forfeiture proceedings may not be initiated on less than probable cause, but the probable cause threshold in a drug forfeiture case is the same as elsewhere—there must be a reasonable ground for belief of guilt, supported by less than prima facie proof but more than a mere suspicion. *United States v. $38,600 in U.S. Currency,* 784 F.2d 694 (5th Cir.1986). Once the government has met its burden of proving that probable cause exists, the owner of the property bears the burden of refuting forfeitability by a preponderance of the evidence. *See United States v. Brock,* 747 F.2d 761, 762 (D.C.Cir.1984) (*per curiam*).

. . . .

A direct connection between the property subject to seizure and the illegal activity that renders the items forfeitable need not be shown in order to establish probable cause. Rather, probable cause analysis looks to the totality of the circumstances surrounding the situation. *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). Furthermore, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates,* 462 U.S. at 244 n. 13, 103 S.Ct. at 2335 n. 13.

*United States v. Edwards,* 885 F.2d 377, 389–390 (7th Cir.1989); (*Cited with approval in United States v. On Leong Chinese Merchants Association Building,* 918 F.2d 1289, 1292 (7th Cir.1990) (discussing the government's burden in civil forfeiture cases)). We will affirm a district court's forfeiture order if the defendant real estate was "used *in any manner or part* to commit or facilitate the commission of a drug related offense." *United States v. Real Estate Known as 916 Douglas Avenue,* 903 F.2d 490, 494 (7th Cir.1990) (Emphasis added).

■ In the present case, the evidence established that the defendant real estate was used to facilitate the commission of a drug related offense. We agree with the district court's conclusion that the presence in Gordon's residence of 460 marijuana

plants, together with "sophisticated 'home gardening' equipment and 'growing tools' " provided a reasonable ground for believing that Gordon was engaged in intentional manufacture and that the plants were going to be "trafficked," and with the court's further conclusion that Gordon failed to meet his burden of proving that the property was *not* subject to forfeiture (the burden having shifted to him after the government met its burden on the probable cause determination).

## C. *Scope of Forfeiture Order*

Gordon argues that the district court erred in "refusing to divide [his] property into forfeited and non-forfeited parcels." Appellant's Brief, pp. 29–33. According to Gordon, four (4) acres of his five (5) acre tract consisted of uncultivated woodland which "[was] not at any time involved in or used for the growing operation." Appellant's Brief, p. 30. Gordon argues that (1) the court erred in ordering forfeiture of his entire property because only a portion thereof was "substantially connected" to his alleged drug activity, and (2) the district court's forfeiture order does not withstand scrutiny under the Eighth Amendment. Appellant's Brief, pp. 29–33; Appellant's Reply Brief, p. 4.

### 1. The Breadth of the Statute

■ We turn first to Gordon's argument that the district court erred in ordering the forfeiture of his entire five (5) acre tract because only a portion thereof was "substantially connected" to his alleged drug activity. This particular argument is without merit because the government is not required to meet such a burden in a civil forfeiture case. As the Court observed in *United States v. Real Estate Known As 916 Douglas Avenue,* 903 F.2d at 494:

A "substantial connection" is not required between the property and the related drug offense for forfeiture of real estate under 21 U.S.C. § 881(a)(7). Instead, the government must only demonstrate that the nexus is more than incidental or fortuitous.

*Id.* We agree with those courts which hold that 21 U.S.C. § 881(a)(7) clearly contemplates the "forfeiture of an entire tract of land based upon drug-related activities on a portion of a tract[,]" *United States v. Reynolds,* 856 F.2d 675, 676 (4th Cir.1988); *Accord United States v. 141st Street Corporation by Hersh,* 911 F.2d 870, 880 (2d Cir.1990), *cert. den.,* — U.S. —, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991), *United States v. One 107.9 Acre Parcel of Land in Warren Township,* 898 F.2d 396, 400 (3d Cir.1990), and *United States v. Premises and Real Property at 250 Kreag Road,* 739 F.Supp. 120, 124–125 (W.D.N.Y.1990), and accordingly reject Gordon's effort to read a "substantial connection" requirement into the statute. As the Court explained in *United States v. Real Estate Known As 916 Douglas Avenue,* 903 F.2d at 493, "[g]rafting [such a requirement] on to the plain language of this statute would not avoid ambiguity or the frustration of the Congressional scheme, but promote them."

Gordon's reliance upon *United States v. Property at 4492 S. Livonia Road,* 889 F.2d 1258, 1270 (2d Cir.1989), *United States v. McKeithen,* 822 F.2d 310, 313 (2d Cir.1987), and *United States v. About 151.-682 Acres of Land,* 99 F.2d 716 (7th Cir. 1938), is misplaced. In *Livonia,* the Second Circuit "left open the question whether section 881(a)(7) permits forfeiture of an entire tract of real property when only part of [the tract] is used to facilitate narcotics trafficking." *See United States v. 141st Street Corporation by Hersh,* 911 F.2d at 880 (*Citing Livonia,* 889 F.2d at 1270). The question was answered a short time later in *United States v. 141st Street Corporation:*

> We now hold that the plain language of the statute [21 U.S.C. § 881(a)(7)] indicates Congress' intent that an entire parcel of land may be subject to forfeiture even if only part of it is directly connected to drug activity. In reaching this conclusion we join the other Courts of Appeals that have considered this question, all of which have adopted this interpretation of the statute.

*Id.,* 911 F.2d at 880 (Citations omitted).

The Second Circuit's decision in *United States v. McKeithen,* 822 F.2d at 313, which predates *Livonia* and pertains to a different statute, also does not lead this Court to the conclusion that the district court erred in refusing to direct the forfeiture of only a portion of Gordon's five (5) acre tract. First, "criminal forfeiture cases have questionable precedential value in civil forfeiture cases, given the historical distinction between the two types of actions." *United States v. Tax Lot 1500,* 861 F.2d 232, 235 (9th Cir.1988), *cert. denied sub nom., Jaffee v. United States,* — U.S. —, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989). Second, while the language of the statute which was at issue in *McKeithen* supported the Second Circuit's holding that proportional forfeiture was permitted, the language of § 881(a)(7) simply does not admit of the same construction. At issue in *McKeithen* was a statute which permitted forfeiture of "any ... property ... affording a source of influence over" a continuing criminal enterprise. 21 U.S.C. § 848(a)(2) (1982). The *McKeithen* Court held that proportional forfeiture was permissible under 21 U.S.C. § 848(a)(2) because the statute required a connection between the property sought to be forfeited and the continuing criminal enterprise.

Finally, this Circuit's early decision in *About 151.682 Acres of Land,* which was cited in *McKeithen,* does not support Gordon's argument because the prohibition statute which was at issue in that case contained limiting language which Congress did not include in 21 U.S.C. § 881(a)(7). *See United States v. Reynolds,* 856 F.2d 675, 677 (4th Cir.1988). By its terms, the prohibition statute permitted forfeiture of the offending distillery, the distilling apparatus, and "all real estate and premises *connected therewith.*" *Id.* (*Quoting, About 151.682 Acres of Land,* 99 F.2d at 719; Emphasis original).

## 2. Eighth Amendment Proportionality

Insofar as the Eighth Amendment is concerned, the fact that the forfeiture ordered in the present case was civil rather than

criminal has special significance.[3] The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In *United States v. On Leong Chinese Merchants Association Building*, 918 F.2d at 1296, the Seventh Circuit rejected the argument that the district court lacked the power to order an entire building forfeited under the applicable (civil) provision of a federal anti-gambling statute (18 U.S.C. § 1955). The Court reasoned as follows:

> [Claimant] argues that [forfeiture of its entire building] would violate the Eighth Amendment prohibition on disproportionate punishment. But courts uniformly have held that the Eighth Amendment does not apply to civil *in rem* actions, since they are remedial in nature and not punishments for crimes. *United States v. One 107.9 Acre Parcel of Land Located in Warren Township*, 898 F.2d 396, 400–401 (3d Cir.1990); *United States v. A Parcel of Land*, 884 F.2d 41, 43–45 (1st Cir.1989); *United States v. Santoro*, 866 F.2d 1538, 1543–1544 (4th Cir.1989); *United States v. Tax Lot 1500 Township 38 South, etc.*, 861 F.2d 232, 234–235 (9th Cir.1988), *certiorari denied, Jaffe v. United States*, — U.S. —, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989).

*Id.*, 918 F.2d at 1296.[4]

█ While we continue to adhere to the view that "the Eighth Amendment does not apply to civil *in rem* actions," *On Leong*, 918 F.2d at 1296, it should be noted that the opposing view is not without its proponents. In his concurrence in *On Leong*, Judge Cudahy stated that "[i]t would defy common sense to prohibit disproportionate forfeiture of the property of a defendant who has been convicted of a criminal violation, *see, e.g., United States v. Busher*, 817 F.2d 1409 (9th Cir.1987) (finding the eighth amendment applicable to criminal forfeiture proceedings), while placing no limits on the power of government to seize any real estate related to an offense in an ostensibly *in rem* action." *Id.*, 918 F.2d at 1299 (Cudahy, J., concurring).[5] Judge Cudahy cited Judge Flaum's earlier concurrence in *United States v. Real Estate Known as 916 Douglas Avenue*, 903 F.2d at 495 (Flaum, J., concurring), wherein Judge Flaum had stated "there might be situations where the application of the broadly-written provision [21 U.S.C. § 881(a)(7)] would raise eighth amendment concerns." *Id.*

Additionally, at least one commentator has observed that two recent United States Supreme Court decisions may be read as suggesting that the Supreme Court would apply Eighth Amendment proportionality analysis in a civil forfeiture action. 2 D. Smith, *Prosecution and Defense of Forfeiture Actions* § 13.05 (1991) (*Quoting*

---

**3.** In *United States v. Nelson*, 851 F.2d 976, 981 (7th Cir.1988), the Court explained the fundamental distinction between civil and criminal forfeiture:

> Under the civil forfeiture statutes, the forfeiture proceeding is *in rem* against the property, and, since the property being forfeited is itself considered the offender, the forfeiture is not part of the punishment for the criminal offense. Under [21 U.S.C. §] 848, however, the forfeiture is part of the criminal proceeding against the individual. The proceeding is *in personam* against the defendant and the forfeiture is part of the punishment.

*Accord United States v. Moya–Gomez*, 860 F.2d 706, 721, n. 15 (7th Cir.1988).

**4.** In his concurring opinion in *On Leong*, Judge Cudahy observed that serious constitutional questions would be raised if the government was serious in its suggestion that 18 U.S.C. § 1955 would authorize it to seize the King Ranch ("a legendary Texas spread covering hundreds of square miles") "were it to detect an illegal crap game in one stable." *Id.*, 918 F.2d at 1298 (Cudahy, J., concurring). Judge Cudahy noted that the government's reliance upon 21 U.S.C. § 881(a)(7) was misplaced because that section, "*unlike § 1955*, ... specifically authorizes forfeiture of an entire tract of land regardless of the magnitude of the infraction." *Id.*, at n. 1 (Emphasis added).

**5.** Similarly, in *United States v. One 1988 Ford Mustang*, 728 F.Supp. 495, 499, n. 3 (N.D.Ill. 1989), Judge Aspen stated that although the caselaw led him to conclude that the Eighth Amendment does *not* apply to civil forfeitures, he was nonetheless of the opinion that "criminal and civil forfeitures should ... be treated the same." Judge Aspen concluded, however, that "since the Supreme Court continues to adhere to the *in rem* fiction, we have no choice but to decide otherwise."

*Browning–Ferris Industries v. Kelco Disposal, Inc.*, 492 U.S. 257, 109 S.Ct. 2909, 2920, 106 L.Ed.2d 219 (1989) (dicta) (Smith noted that the Supreme Court's Opinion in *Browning–Ferris* contained language "strongly suggesting that the eighth amendment applies to civil penalty and civil forfeiture actions brought by the government."), and *citing United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989)).

If this Court were to treat civil forfeitures in the same manner as criminal forfeitures, then the same rules would govern both types of forfeitures. Regardless of the type of forfeiture, a claimant would be required to prove (rather than merely suggest) disproportionality. A claimant who argued, as Gordon does in the present case, that the district court's forfeiture order was *per se* disproportionate under the Eighth Amendment would not prevail. *See United States v. Vriner*, 921 F.2d 710, 712–713 (7th Cir.1991) (Court rejected the defendant's *per se* argument, noting that it was his burden to show a "gross disproportionality between the offense for which he was convicted and his entire penalty[.]").[6] Gordon is not entitled to prevail on this issue because his proportionality argument, like the defendant's argument in *United States v. Vriner*, 921 F.2d at 712–713, does not extend beyond the contention that the government failed to show that his entire property was connected to drug activity.

■ While Gordon states that "the instant case *addresses the issue* of 8th Amendment protections against disproportiona[te] punishment," he does not attempt

to explain why the forfeiture is alleged to run afoul of the Constitution. Appellant's Brief, p. 32. His argument constitutes little more than the mere *suggestion* that the Court could consider whether the district court's forfeiture order may have been excessive. In his initial Brief, Gordon states that Constitutional protection should be afforded in a civil forfeiture action just as it is in a criminal forfeiture action. In his Reply Brief, Gordon abruptly states, without adducing any supporting facts, that "[t]he penalties of a unit forfeiture are grossly disproportionate to [the] alleged offense." Appellant's Reply Brief, p. 4 (*Citing United States v. Vriner*, 921 F.2d 710 (7th Cir.1991)). What is missing from Gordon's argument is an explanation of *why* the forfeiture order which was entered in the present case was excessive under the Eighth Amendment's excessive fines clause or its cruel and unusual punishment clause. Gordon mentions but does not discuss, weigh, or attempt to assign a value to, any of the factors which are typically considered in determining proportionality. *See United States v. Busher*, 817 F.2d 1409, 1415 (9th Cir.1987), and *United States v. Vriner*, 921 F.2d 710, 713, n. 5 (7th Cir. 1991).[7]

### D. *Denial of Motion to Stay Pending Resolution of Criminal Charges*

■ Finally, Gordon argues that the district court should have granted his request for a stay of the forfeiture proceedings in light of the fact that the criminal charges which had been filed against him in Wisconsin State Court had not yet been re-

---

**6.** While acknowledging, in the *criminal* forfeiture context, that "Eighth Amendment concerns may arise when, even though only a few minor acts were illegal, a defendant must forfeit his entire interest in the property", the *Vriner* Court found it unnecessary to decide the appropriate standard to be used in resolving a defendant's claim that a criminal forfeiture order is disproportionate under the Eighth Amendment. *Id.*, 921 F.2d at 713. The *Vriner* Court did not determine the appropriate standard because the defendant's argument was confined to the argument that the forfeiture constituted a *per se*

violation of the cruel and unusual punishment clause. *Id.*

**7.** Such factors include, but are not limited to, "the circumstances surrounding the defendant's criminal conduct, the harm caused by his conduct, his motive in committing the crime[, ...] the value of the drugs involved, and the nexus between the property used in the criminal activity and the rest of the property." *United States v. Vriner*, 921 F.2d at 713, n. 5 (*Citing United States v. Busher*, 817 F.2d at 1415, and *United States v. Littlefield*, 821 F.2d 1365, 1368 (9th Cir.1987)).

solvèd.[8] Gordon suggests that he did not waive this issue by agreeing to go to trial on stipulated facts. Instead, he submits that by not objecting until late in the proceedings he was simply "recogniz[ing] the futility of reiterating in an oft repeated request." Appellant's Reply Brief, p. 9. We agree with the government that this issue has been waived.

Gordon's counsel's affirmative decision to submit this case to the district court on stipulated facts, rather than to persist in his objection, had the same effect as if he had not objected (or made known his concerns) in the first instance. As the Court explained in *Cole Energy Development Company v. Ingersoll–Rand Company*, 913 F.2d 1194, 1200 (7th Cir.1990), "[l]itigants cannot withhold objections to use as trump cards in the event they lose on the merits." *Id.* (Citations omitted). The *Cole Energy Development Company* Court quoted with approval the Second Circuit's decision in *Semmes Motors, Inc. v. Ford Motor Company*, 429 F.2d 1197, 1205 (2d Cir.1970). *Id.* The *Semmes* Court observed that "[a] party who chooses to gamble on that procedure [resolution of motion for preliminary injunction based solely on affidavits] cannot be heard to complain of it when the decision is adverse." *Id.* (Bracketed material in original). The same can be said of Gordon's counsel's decision to allow the forfeiture action to be tried on stipulated facts. By agreeing to go to trial on stipulated facts without objecting to the procedure on Fifth Amendment grounds, the claimant waived this issue. *Hunter v.*

*Clark*, 934 F.2d 856, 865 (7th Cir.1991) (Easterbrook, J., and Posner, J., concurring) (Fifth Amendment Privilege against compulsory incrimination is waivable).

Even if Gordon's failure to object did not constitute a waiver, he would not be entitled to relief because he did not make a sufficient showing to justify a stay. While Gordon is correct in his assertion that the Fifth Amendment privilege against self-incrimination is applicable in civil forfeiture proceedings, *see Ryan v. Commissioner*, 568 F.2d 531, 542 (7th Cir.1977), *cert. den. Estate of Ryan v. Commissioner*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978); *In re Kave*, 760 F.2d 343, 354 (1st Cir.1985), he fails to recognize that "[a] blanket assertion of the privilege is no defense to [a] forfeiture proceeding." *United States v. $250,000 in United States Currency*, 808 F.2d 895, 901 (1st Cir.1987) (*citing United States v. Little Al*, 712 F.2d 133, 136 (5th Cir.1983)). A blanket assertion of the privilege also does not provide a sufficient basis for a district court to grant a stay.[9] As the Fifth Circuit explained in *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir.1983):

[A] stay contemplates "special circumstances" and the need to avoid "substantial and irreparable prejudice." The very fact of a parallel criminal proceeding, however, d[oes] not alone undercut [a defendant or claimant's] privilege against self-incrimination, even though the pendency of the criminal action "force[s] him to choose between preserving his privilege against self-incrimination and losing the civil suit."

**8.** During the status conference of February 28, 1990, Gordon's counsel raised the issue of whether the court had previously entered a stay of discovery pending the resolution of the state criminal proceedings. Transcript of February 28, 1990 Status Conference, pp. 7–8. The government characterized the stay of discovery (which had been entered at the preceding hearing) as "informal," and opined that at the time it was entered the parties had contemplated the speedy resolution of the state criminal matter. The district court essentially agreed, stating "if there is a stay order, I vacate it now." *Id.*, at 8–9.

**9.** While district courts must "seek to accommodate both the constitutional [privilege] against

self-incrimination and the legislative intent behind the forfeiture provision," *United States v. United States Currency*, 626 F.2d 11, 15–17 (6th Cir.1980), *cert. denied sub nom. Gregory v. United States*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980) (*cited with approval in United States v. $250,000 in United States Currency*, 808 F.2d 895 (1st Cir.1987)), they have a certain amount of discretion in determining which course to follow. For example, a court may stay the civil forfeiture action pending the resolution of the criminal proceedings. *Id.* At the same time, district courts are under no obligation to take affirmative steps to protect a claimant/defendant's privilege (i.e., to grant a stay) when the claimant/defendant, by his words or actions, has chosen to waive the privilege.

*Id.* (Citations omitted). Gordon's failure to indicate with precision how he would be prejudiced if the civil action went forward while the criminal action was pending in state court is yet another factor which leads the Court to the conclusion that he was not entitled to a stay.

## III.  CONCLUSION

For the foregoing reasons, the Court concludes that the district court's decision must be AFFIRMED.